Argued May 19, affirmed June 21, reconsideration denied July 28, petition for review denied September 1, 1976

## STATE OF OREGON, *Respondent,*

*v.*

## ROBERT DAVID VANDERBERG, whose true name is James Paul Corcoran, *Appellant.*

### (No. 75-4981, CA 5647)

550 P2d 1248

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

**FOLEY, J.**

After his motion to suppress evidence was denied, defendant was tried and convicted of first degree burglary. He received a sentence of seven years. His sole assignment of error on appeal is that the trial court improperly denied his motion to suppress.

About 1:30 a.m. in an "exceptionally heavy" burglary area on River Road in Eugene, Oregon, Officers Koop and Ware, who were patrolling in the area, saw two men emerge from the shadows adjacent to a church. One of the men was carrying an object but Officer Koop could not tell what it was. He was concerned, knowing that the church and businesses in the area were closed and that there were seldom many people on foot in the area this time of night. Having in mind it was an area of "numerous burglaries and thefts," Officer Koop decided to stop the men to make inquiry. When he stopped the men and asked for identification, he saw that the object defendant was carrying was the kind of jacket normally worn by a high school or junior high school student. Officer Koop considered this to be unusual. The only identification defendant produced was a social security card and defendant's companion produced two pieces of identification with two different names. When asked what they were doing in the area, defendant said they had just left a friend's house and were headed downtown. Defendant was unable to satisfactorily answer the officer's questions as to who his friend was and where he lived. He told the officer "he [defendant] just came from Seattle on the rails." The officer testified that it was "[a] couple of miles" to the railroad.

During the interview Officer Koop noticed a large bulge in defendant's left pants' pocket. Officer Koop decided to pat defendant down "for my own safety to determine whether there were weapons being carried that could be used against me."[1]

---

[1] When asked on cross-examination by defendant's attorney if he knew "of any weapon shaped like the objects which [he] found in [defendant's] pocket," Officer Koop answered:

"Folded up knives and Saturday night specials."

[ 813 ]

When Officer Koop patted the "bulge," he could not determine what it was. It felt "hard." Officer Koop then asked defendant if he would let the officer see what was in the defendant's pocket. Defendant reached in his pocket and took out two rolls of stamps in "hard plastic dispensers" and a lady's wristwatch.

Because Officer Koop thought that a man would not "normally" carry those items, he next picked up the jacket which defendant had laid on the sidewalk. As Officer Koop picked up the jacket, a "large type screwdriver fell to the ground." Officer Koop described the screwdriver as

> "* * * an extremely large screwdriver to be carrying around. It was too big to fit in * * * [a] pocket without it sticking out three quarters of one length."

He testified that in his experience such screwdrivers are commonly used for "[p]rying open doors and locks and prying open anything that's locked."

Officer Koop then laid the items which defendant had taken from his pocket and the screwdriver on the hood of the patrol car and radioed for additional units to start checking buildings and businesses in the area for a possible burglary. Officer Koop then advised defendant and his companion of their rights.

Defendant contends that the pat-down search and the subsequent seizure of evidence from his person were unjustified and unreasonable under *Terry v. Ohio,* 392 US 1, 30, 88 S Ct 1868, 20 L Ed 2d 889 (1968), which holds:

> "* * * [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area

to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. * * *"

We conclude that the observation of the defendant carrying an object in an area of high burglary and theft activities, coming from the shadows on the private property of a church at 1:30 a.m., carrying an object which the officer was unable to identify, gave the officer a basis to reasonably conclude in the light of his experience that criminal activity could be afoot. *Terry v. Ohio, supra.* Thus we hold that the stop was valid. *See State v. Ward,* 16 Or App 556, 519 P2d 1269, Sup Ct *review denied* (1974); *State v. Head,* 13 Or App 317, 509 P2d 52, Sup Ct *review denied* (1973).

The sequence of events which transpired after the initial stop made reasonable the subsequent actions of the officer. The order of the trial judge denying the motion to suppress is affirmed.

Affirmed.