Argued and submitted May 30, reversed and remanded
for trial July 21, reconsideration denied September 11,
petition for review denied November 10, 1980 (290 Or 149)

# STATE OF OREGON,
*Appellant,*

*v.*

# JOHN MARTIN SCHEDLER,
*Respondent.*

## (No. 79-9-80, CA 16363)

614 P2d 591

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

J. Bradford Shiley, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal by the state from an order suppressing certain items of evidence seized from defendant's car. The trial court found that the police had no reasonable suspicion to believe defendant was involved in criminal activity at the time the stop of defendant's vehicle was made.

The essential facts are as follows:

At about 3 a.m. a Lake Oswego police officer, parked in front of the police station, heard the sound of glass breaking, turned his head and, within a couple of seconds, saw a car driven by a person later identified as defendant pull out of an alley that led to the police parking lot. There was nothing unusual about the manner in which the car was being driven. The officer followed the car for an eighth to a quarter of a mile and then pulled the car over. Defendant had done nothing illegal although the officer characterized the encounter as a "traffic stop." The conduct of defendant and the other occupant (*see State v Hurtado,* 47 Or App 110, 614 P2d 591 (1980), was not furtive in any way. Upon approaching the car, a station wagon, the officer spotted two fire extinguishers not of the type normally carried in vehicles and two boxes containing Schlitz beer bottles, some of which were empty.

When asked about the breaking glass, defendant replied that he had been turning around in the lot and knew nothing about it. The officer made a radio check for warrants and vehicle registration information. About ten minutes after the initial stop, the officer questioned defendant about the fire extinguishers. Hurtado claimed they belonged to his parents and further stated that the beer bottles were his. There was conflicting testimony as to whether defendant stated initially that he did not know who owned the fire extinguishers.

At this time of night, there were only three police officers on duty. About 15 minutes after the stop, the officer heard on the radio that another officer had discovered a burglary at a local junior high school. He called that officer and was told that Schlitz beer bottles had been found at the scene. No information was available or requested as to whether any fire extinguishers had been taken. The officer advised defendant and Hurtado of their *Miranda* rights[1] and radioed for the third officer who came and watched the two while the first officer returned to the police station to check the origin of the sound of breaking glass he had heard. He discovered a Schlitz beer bottle broken against a police car.

The officer returned to defendant's car and the two officers questioned defendant and Hurtado separately after informing them that they were going to be charged with criminal mischief. After a brief period of questioning, the defendant and Hurtado conferred and admitted stealing the fire extinguishers, although not from the school at which the burglary had been discovered. Defendant was taken to the station and formally charged. The entire encounter took about an hour.

ORS 131.615 provides:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2)   The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)   The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

The trial court found that there was no reasonable suspicion to stop the car because there was no

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

traffic infraction and because the speed with which the car appeared after the sound of breaking glass militated against any criminal connection between the two. Defendant also argues that the stop was unreasonable in scope and time and was not limited to the circumstances that aroused the officer's suspicion.

■       We believe the facts here justified the stop of defendant's vehicle. While susceptible to numerous interpretations, the breaking of glass does suggest some activities — vandalism, breaking and entering — which are criminal in nature. The fact that the car appeared just after the breaking does not eliminate all possible interpretations of criminal activity. The late hour and the improbability that a car would be leaving an alley leading from a police parking lot at that time, coupled with the breaking of glass, were sufficient to arouse the officer's suspicion that a crime had been committed. ORS 131.605(4).[2] *State v. Valdez,* 277 Or 621, 628-29, 561 P2d 1006 (1977).

■       The defendant argues that the fact that the officer followed the car for a quarter of a mile before pulling it over detracts from the reasonableness of the officer's suspicion. In *State v. Carter/Dawson,* 287 Or 479, 485, 600 P2d 873 (1979), our Supreme Court stated:

> "The officer's motives for an otherwise justifiable traffic stop are, as we held in *Tucker* [*State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979)], not relevant to the question of its validity. The question remains whether a policeman who wants to get a closer look at a car or its occupants may follow it and, if the driver commits a traffic violation while the officer is following, may then stop it. We conclude that under normal circumstances he may."

Here there was no traffic infraction to justify the stop. If the police are entitled to follow a person whom they

[2] 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625." ORS 131.605(4).

have no reasonable suspicion to stop but who has attracted their attention, they are certainly entitled to follow where reasonable suspicion exists to determine whether the suspect's subsequent actions bear out the officer's suspicion in some way. *State v. Tucker, supra,* 286 Or at 491-92.

■ ■ Once the stop was made and the bottles and fire extinguishers were in plain view, the officer had the right to inquire into defendant's identity and ownership of the items. In the course of this inquiry apparently, and within 15 minutes of stopping defendant, the officer learned of the burglary and the presence of Schlitz bottles at the crime scene. At this point we believe the officer had probable cause to arrest defendant for burglary given the late night hour, the time proximity of the reported burglary, the Schlitz bottles at the scene and the presence of fire extinguishers which the officer testified were of a type used in schools. While it appears that the officer read defendant his *Miranda* rights at this point, the record does not reflect that he informed defendant that he was under arrest. The existence of probable cause to arrest, however, is sufficient to justify continued detention. *State v. Cloman,* 254 Or 1, 12, 456 P2d 67 (1969). Consequently, we need not consider whether the detention was otherwise unreasonable in terms of length of time or scope of inquiry.

■ Defendant's final argument is that his confession of burglary was coerced by threats of jail. This contention was not raised by defendant's motion to suppress which stated only Fourth Amendment grounds, and, therefore, cannot be considered on appeal.

Reversed and remanded for trial.