Argued and submitted September 17, affirmed November 24, 1980

In the Matter of James Frank Lesh, a Child,

STATE ex rel JUVENILE DEPARTMENT
OF COOS COUNTY,
*Respondent,*

*v.*

LESH,
*Appellant.*

(No. 10268, CA 17393)

619 P2d 935

David A. Dorsey, Coos Bay, argued the cause for appellant. With him on the brief was Bedingfield, Joelson and Gould, Coos Bay.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal from an order making defendant, a juvenile, a ward of the court under ORS 419.476(1)(a) on the ground that he committed an act which, had defendant been an adult, would have been chargeable as burglary in the first degree. ORS 164.225(1)(a). Defendant assigns as error the denial of his motion to suppress evidence seized from defendant on the ground that there was no articulable basis for the police officer's suspicion that defendant had committed a crime and that the officer's stop of defendant was therefore unlawful. Defendant further assigns as error the trial court's failure to suppress his confession, which he claims was involuntarily made.

The following are the essential facts.

A uniformed police officer in a marked car saw defendant and a companion pushing a wheelbarrow along the street in a residential neighborhood at about 1 p.m. Both appeared to be school-aged and it was a school day. From his vantage point in the patrol car, he could see a cardboard wine box, a green canvas bag and, protruding from the top of the box, a stereo component turned on end, which was subsequently identified as a combination tuner-turntable. The officer pulled his vehicle parallel to defendant and got out. The two suspects stopped when the officer approached and asked if he could talk to them. He asked why they were not in school and defendant's companion replied that he had been sick, had stayed home with his parents' knowledge and was out for a walk. There is no evidence of defendant's answer, if any. The officer then inquired about the stereo equipment. He was told they were dismantling a fort they had in a near-by park and were taking this equipment home. When asked how they had played a stereo in a park without electricity, defendant's companion replied that they kept the stereo there "for atmosphere" and defendant said they had a long extension cord. The officer observed a cassette player in the box under the tuner and also noticed that the wires on the equipment had been cut. In the canvas bag, which defendant unzipped at the officer's request, the officer discovered seven bottles of wine and other items. Defendant's companion said the

wine belonged to them, and defendant claimed the wine belonged to his companion's brother. The officer decided the items had been stolen and placed them in the trunk of his car. While he was doing so, defendant ran away. The officer called to him to come back and threatened to track defendant with his dog, but defendant disappeared.

The police officer was the only one to testify concerning the initial encounter. He testified that he found it suspicious that two apparently school-aged young men would be pushing a wheelbarrow containing stereo components through a residential neighborhood during the afternoon on a school day. He further testified that the city police had an arrangement with the school district whereby they would pick up truants and take them to school for appropriate administrative action. He stated he had no knowledge of a specific burglary that day.

Through other avenues of investigation, not relevant here, the police eventually learned of defendant's whereabouts and arrested him. They took him to the city police station where he was informed of his *Miranda* rights.[1] He indicated that he understood his rights. The officer who interrogated defendant testified specifically that he had not asked the final question on the rights card: "Having these rights in mind, do you wish to speak to me now?" He stated:

> "I advised him, I said I would like to talk to you about the burglary that you and John were involved in earlier today. I said, would you like to tell me your side of it, and at that point he then gave me a statement."

He further testified that no threats, promises or other types of coercive measures were used to prompt the statement.

Assuming, *arguendo,* that the encounter here amounts to a "stop,"[2] we conclude that the officer was reasonable in suspecting that defendant was involved in a crime. ORS 131.615(1).

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966).

[2] ORS 131.605(5) provides:

ORS 131.605(4) states:

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

■ Defendant argues that truancy is not a crime and thus suspicion that defendant was "playing hooky" would not provide sufficient justification for stopping him. The state counters that a juvenile is required to attend school (ORS 339.010) and that his parents are required to keep him in school (ORS 339.020) or be subject to criminal sanctions (ORS 330.990). Whether or not an officer may encounter a juvenile for the sole purpose of determining truancy need not be decided, however, because, as the officer testified, he was acting also on the suspicion that a theft had occurred. *See State v. Tucker,* 286 Or 485, 495, 595 P2d 1364 (1979). When he pulled alongside defendant, the officer could observe a stereo component tipped on end in a wheelbarrow, an unlikely vehicle for transporting equipment of that delicacy. The presence of school-aged persons in a residential area during school hours heightened the officer's legitimate suspicion that foul play was afoot. He was entitled to stop and detain defendant long enough to inquire into defendant's presence in the neighborhood and ownership of the stereo equipment. ORS 131.615(3). Once he saw the cut wires on the equipment and obtained conflicting stories from defendant and his companion, he had probable cause to believe the goods were stolen and to detain defendant until the matter could be cleared up. It follows that the stop in this case was lawful.

With respect to defendant's second assignment of error—that his statement to the police was involuntarily made—the trial court found that defendant had been given his *Miranda* rights, but that the officer did not ask the specific question which appears on the advice of rights card and which seeks, in effect, a express waiver of these rights. By letter opinion, the trial court held, in part:

"(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

"The mere recital of the *Miranda* litany helps very little as the court must base its decision [with respect to voluntariness] on articulable facts. In this case the officer did ask the child if he wanted to tell his side of the story, and the child's response in light of his knowledge of his rights, tips the scale in favor of waiver. It would be much clearer if the police were not advised to avoid getting an express waiver, or as we say, asked [sic] question 6. The reason they do not ask it is apt to be construed by the court as a fear of a negative answer. This fear is part of the total circumstances.

"Because the officer unwittingly asked for an express waiver and the juvenile responded in a manner that waived his right to remain silent, suppression will be denied."

■■ We agree with the trial court's analysis. The defendant indicated he understood his rights and was thereafter asked if he wished to speak to the officer concerning the incident. There was no indication in the record of coercion on the part of the police or that defendant attempted to assert his rights at any point during the questioning. The fact that the officer asked defendant if he wished to waive his rights in words other than those appearing on the advice of rights card is inconsequential. *Miranda* does not require a particular formula to be used. *Miranda v. Arizona, supra,* 384 US at 444. The state has met its burden of showing a knowing and voluntary waiver by defendant of his rights in this case. *State v. McGrew,* 38 Or App 493, 498, 590 P2d 755, *rev den* 286 Or 149, *cert den* 444 US 867 (1979).

Affirmed.