Argued and submitted January 23, affirmed June 27, 1984

# STATE OF OREGON,
*Appellant,*

*v.*

# KHALED N. GOAID,
*Respondent.*

## (BVP-85145; CA A29352)

683 P2d 129

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Helen I. Bloch, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

NEWMAN, J.

### NEWMAN, J.

The state appeals the trial court's order allowing defendant's motion to suppress. We affirm. Defendant was charged with driving without a license, ORS 482.040, and driving while suspended. ORS 487.560. At 2:30 a.m. on February 5, 1983, Officer Bartolin was on duty at the Valley Plaza Shopping Center in Beaverton. He was in civilian clothes in an unmarked vehicle and was backing up two uniformed officers who were investigating a disturbance at a night club in the shopping center. From past experience, Bartolin knew that the parking area had been a scene of criminal activity.

Bartolin saw defendant sitting low in his car in the parking area. After a few minutes defendant drove his car closer to the main entrance of the night club. Bartolin testified that he was suspicious of defendant's posture and was concerned for the safety of the other two officers who had their backs to defendant. After observing defendant for 15 minutes, Bartolin walked to the vehicle, turned back the lapel of his windbreaker, showed defendant his police badge and identified himself as a police officer. He asked defendant for identification. He also asked why he had been seated alone for so long in the parking area. Defendant gave him an identification card and told him that he was waiting for some friends. Bartolin asked if defendant had a driver's license and he said, "No."

The officer took defendant's identification card, walked to his vehicle, made a radio check and learned that defendant's license had been suspended. He returned to the car and asked defendant if he was aware of the status of his license. Defendant admitted that he knew it. He apologized for driving to the parking lot and for moving his car in the lot. Defendant was cited and charged with driving while suspended.

At the suppression hearing, Bartolin testified:

"[Defense Counsel]: Are you testifying that defendant was free to leave when you approached his vehicle and questioned him?

"A  [Bartolin]: Probably could have if he had wanted to.

"Q  Are you saying that the defendant was free to leave the area when you went to his vehicle and approached him?

"A   If he had left, I probably would have stopped him then and found out why he was leaving. That would have made me even more suspicious.

"Q   OK, so you would have simply stopped him and requestioned him, is that correct?

"A   Yes."

Defendant moved to suppress evidence obtained from the encounter on the ground that the officer had stopped him without a reasonable suspicion that he had committed a crime. ORS 131.615.

The trial court granted defendant's motion to suppress:

"* * * [I]f I were the defendant and a person walked to my car and showed me his badge, that I would take that, as a show, a sign of authority, and I was obligated or at least had better think real seriously about abiding by his orders or requests * * *.

"If that is not a stop, then everything that proceeded thereafter is perfectly all right. * * * The furnishing of an ID card and not a license leads to the natural inquiry about the existence of a driver's license, and the denial of that driver's license leads to at least a suspicion that the person is suspended. * * * So everything that followed from that is obviously appropriate.

"* * * [T]he initial contact, I think, was a stop, because of the show of the badge followed immediately by the question, and * * * there wasn't really any ground that a crime had already been committed. And so I will suppress the evidence gained on the basis of what I characterize as the original stop."

The court ruled:

"1.   The contact with the defendant by police officer, Dan Bartolin, constituted a stop of the defendant.

"2.   The stop of the defendant was without reasonable suspicion or probable cause."

There are three types of street encounters between police and citizens: (1) an arrest based on probable cause; (2) a "stop" based either on a reasonable suspicion that the person has committed a crime, ORS 131.615(1), or on a traffic infraction committed in the officer's presence, ORS 484.353(2)(b); *State v. Painter*, 296 Or 422, 676 P2d 309

(1984); and (3) mere conversation, which requires no justification. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978); *State v. Hanna,* 52 Or App 503, 507, 628 P2d 1246 (1981). A stop is a "temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605 (5). If a police officer restrains a person's liberty "by means of physical force or show of authority" he has "stopped" him. *State v. Warner, supra,* 284 Or at 162; *State v. Kennedy,* 68 Or App 529, 683 P2d 116 (1984.)

The state argues that a police officer may approach a person, identify himself and ask some preliminary questions, even though he lacks reasonable suspicion that the person has committed a crime or a traffic infraction. We do not disagree with this proposition, if the person is free to leave if he wishes. *See State v. Hanna, supra; State v. Canape,* 46 Or App 453, 457, 611 P2d 1190 (1980). Here, however, the initial encounter between Bartolin and defendant was a stop. It occurred before defendant gave Bartolin his identification and told him that he did not have a driver's license.[1] Defendant was not free to leave when Bartolin first contacted him, identified himself as a police officer and showed his badge. Bartolin testified that, before reaching defendant's car, he had decided he would not allow defendant to leave until he had asked him some questions. Bartolin had decided to restrain defendant's liberty temporarily, not merely to ask him some preliminary questions with defendant free to leave if he chose. Because Bartolin had made that decision, the encounter that followed was a stop, even though the officer's intent had not been communicated to defendant. Defendant was restrained, even if only temporarily and for a limited purpose. A show of authority and a temporary restraint is sufficient under ORS 131.605. If, as in *State v. Roberti,* 293 Or 236, 646 P2d 1341 (1982), a person is

---

[1] In *State v. Painter, supra,* a police officer approached the defendant, who was walking in an alley at 3 a.m., and asked why he was there. The defendant replied that he had had car trouble. The officer requested identification. The defendant produced an expired Virginia driver's license and several credit cards. The officer retained the license and cards, frisked the defendant and made a radio check that came back clear. The officer asked about the make and location of his car and returned the papers to the defendant, who then left. Using the information he had obtained, the officer subsequently located the car, observed a weapon inside and arrested the defendant for carrying a concealed weapon in his automobile. The court held that the officer had stopped the defendant when he retained the license and credit cards, because the defendant was then "unable to leave." 296 Or at 425.

in custody for *Miranda* purposes when an officer has contacted him in person and made a decision to arrest him, then the person is stopped when an officer has contacted him, shown his authority and made a decision not to permit him to leave until he has asked some questions.

■    The stop was illegal because, until defendant gave Bartolin an identification card and told him that he did not have a driver's license, Bartolin did not have a reasonable suspicion to believe that defendant had committed a crime, ORS 131.615(1), or a traffic infraction. ORS 484.353(2)(b). The court did not err in granting the motion to suppress. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).[2]

Affirmed.

_____

[2] In *State v. McConnville,* 67 Or App 601, 679 P2d 1373 (1984), the issue was at what point an officer must give *Miranda* warnings if he has stopped a person with a reasonable suspicion that the person has committed a crime. Here, Bartolin lacked the reasonable suspicion to support a stop.