STATE OF OREGON,
*Respondent,*

*v.*

GREGORY DALE MESSER,
*Appellant.*

(83-0672; CA A30707)

692 P2d 713

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4)(b). He assigns as error the denial of his motion to suppress a baggie of cocaine found in the cab of his pickup truck on the ground that the warrantless search and seizure was illegal under the relevant statutes and the Oregon and United States Constitutions. We agree that it was improper for the officer to enter the vehicle under the facts of this case and reverse.

Officer Silvis saw defendant and another person sitting in defendant's truck at 3:45 a.m. on June 26, 1982. The truck was parked in the dimly lit north end of the Beaverton Mall parking lot, parallel to and four to five feet from the wall of a retail store building. All the nearby businesses were closed; the last, a drinking establishment, had closed at 2 a.m. Silvis was concerned that a burglary might be in progress and decided to determine what defendant and his passenger were doing. He parked his patrol car, walked to the passenger side of the truck and began talking to the passenger. He saw an unsheathed hunting knife on the seat between the two and, out of concern for his safety, directed defendant and the passenger to get out and step to the rear of the truck. Silvis then entered the cab and seized the knife. In the process, he saw on the seat what he believed to be a baggie of cocaine and seized it. He testified that, when defendant and his passenger left the truck, they were not free to leave.

The state concedes that defendant was stopped under ORS 131.615[1] when he was told to get out of the vehicle. We agree. It also says the stop was justified. We disagree. *See State v. Goaid,* 68 Or App 904, 683 P2d 129 (1984); *State v. King,* 67 Or App 749, 680 P2d 10 (1984). At the time of the stop Silvis knew only that defendant and his passenger were

---

[1] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

parked in an empty parking lot early in the morning and that they had a knife in the car. He did not check the retail store to determine if there was evidence of a forced entry, and he had not received a report of any burglaries in progress. He knew nothing about either of the men involved. Although the facts made it reasonable for a police officer to inquire further, they did not create a reasonable suspicion that defendant or his companion had committed a crime. ORS 131.615(1).[2]

The cases the state cites in support of its claim of reasonable suspicion all involved more suspicious circumstances than existed here. In *State v. Anderson,* 46 Or App 501, 612 P2d 309 (1980), *rev den* 289 Or 903, the defendant parked in a store lot at 1:00 a.m. and walked toward the front door of the obviously closed store. In *State ex rel Juv. Dept. v. Lesh,* 49 Or App 373, 619 P2d 935 (1980), school-aged boys pushed a wheelbarrow containing stereo components through a residential neighborhood during school hours. In *State v. Schedler,* 47 Or App 181, 614 P2d 591, *rev den* 290 Or 149 (1980), the officers heard breaking glass immediately before seeing the defendant's automobile driving away at 3 a.m. In *State v. Stiles,* 68 Or App 297, 680 P2d 1016, *rev den* 297 Or 459 (1984), the defendants came through a hedge and a fence carrying a suitcase and other objects. In *State v. Vanderberg,* 25 Or App 811, 550 P2d 1248, *rev den* (1976), the officer saw the defendant, who was in a high burglary-incidence area, emerge from the shadows of a church with another man, and one of the two was carrying an object. The defendants in all of those cases *acted* in a suspicious fashion; defendant in this case simply sat in his vehicle. We are not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped by a passing police officer.[3]

The state also argues that Silvis could order the men out of the truck and seize the knife because of his concern for

---

[2] The statute does not permit a stop based on a reasonable suspicion that the person stopped *is about to commit* a crime. *See State v. Valdez,* 277 Or 621, 625 n 4, 561 P2d 1006 (1977).

[3] Although possession of a weapon may be relevant to whether a person is committing a burglary, in this case the knife does not add enough to the other circumstances to create a reasonable suspicion that defendant and his companion were in the process of doing so.

his safety. That concern gave him no greater authority than any other person would have had. Because he had no basis for an arrest or a stop, his questioning of defendant and his companion was "mere conversation." *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). "Mere conversation" requires no justification, for any other passerby could do the same. It also involves no legitimate show of authority, and it therefore gives an officer no right to exercise any official authority. Silvis' concern for his safety at a deserted location early in the morning is understandable. However, because he was without authority to compel defendant and his companion to do anything, his only choices were to stay despite his concern or to leave; those are precisely the choices that any curious passerby would have faced. Because he attempted to exercise an authority he did not have, he did not discover the baggie from a position where he had a right to be. His entry into the truck cab violated Article I, section 9, of the Oregon Constitution. The evidence should have been suppressed.

Reversed and remanded for a new trial.