Submitted on record and briefs April 24, affirmed May 27, 1987

## STATE OF OREGON,
*Respondent,*

*v.*

## SCOTT RANDALL WRIGHT,
*Appellant.*

(86-434; CA A41742)

737 P2d 646

Jack Bernstein, Gladstone, filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, filed the brief for respondent. With him were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for possession of a controlled substance. The sole issue on appeal is whether the trial court erred in denying his motion to suppress evidence that he contends was seized after an unlawful stop. We affirm.

Officer Campbell testified that, at about 1:45 a.m., he observed defendant's automobile parked at a gas station that had been closed for several hours. His suspicion was aroused, because no one was near the vehicle, which had not been parked there earlier in the evening, and because the surrounding businesses were also closed. He also knew that other parked cars in the area had been broken into recently. Acting on his suspicions, he drove around the block and called in a license check to see if the car had been reported stolen. The report came back that, although the car had not been stolen, the registered owner's driver's license was suspended. Campbell was also informed that the car's description, a 1965 Dodge Dart painted primer gray, matched the description of a car suspected of having been used in a robbery a month earlier in a neighboring community.

Campbell stopped the vehicle after he came back around the block and saw that it had left the gas station and was headed out of town. He then arrested defendant for driving while suspended and seized the contraband in question after defendant gave him permission to search the car. On appeal, defendant challenges only the legality of the initial stop. The trial court held that it was justified because Campbell had reason to believe that the crime of driving while suspended was being committed in his presence and, in any event, the totality of the circumstances supported Campbell's belief that a crime had been committed.

A peace officer may stop a person and make a reasonable inquiry if the officer "reasonably suspects" that the person has committed a crime. ORS 131.615(1). "Reasonably suspects" means that the officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place." ORS 131.605(4). The standard is in part objective: "The officer must be able to articulate specific, observable facts which would lead a reasonable police officer to believe that a crime has been committed and that the person being detained is connected with it." *State v. Castrejon,* 79

Or App 514, 519, 719 P2d 916 (1986), *citing State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). The case law is unclear, however, with respect to whether the stopping officer's subjective belief that the person has committed a crime must be based on facts that support an objectively reasonable suspicion.

In *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), *affirmed on other grounds,* 287 Or 479, 600 P2d 873 (1979), an officer stopped the defendants' car after seeing it being driven ten miles per hour over the speed limit. The trial court held that the stop was not justified, however, after concluding that the traffic infraction was merely a "pretext" for stopping the defendants in order to conduct an inquiry regarding the possession of controlled substances. We accepted the trial court's finding with respect to the pretext for the stop and also acknowledged that *State v. Valdez, supra,* in which the court first adopted an objective test for determining the lawfulness of a stop, could be interpreted as retaining a subjective element.[1] We held, nevertheless, that "stops are to be tested solely by whether the facts perceived by the stopping officer constitute *objective cause* for the stop" and that "the stopping officer's *subjective reasons* have nothing to do with the legality of a stop." 34 Or App at 30. (Emphasis in original.)

The Oregon Supreme Court explained the anomaly in *Valdez* in *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979), which it decided after our decision in *Carter/Dawson* but before it rendered its own decision in that case. In *Tucker,* it pointed out that the state did not contend in *Valdez* that the stop was justified by the traffic infraction. However, in explaining *Valdez,* the court suggested that the legality of a stop must be determined on the basis of the facts underlying the stopping officer's subjective belief that the stop was justified,[2] although it concluded that the officer's "motive" for making the stop should not be considered. The Supreme Court

---

[1] The court had held that the stop was unlawful, even though the stopping officer had observed the defendant commit a traffic infraction.

[2] The court stated:

"*Valdez* simply holds that when a police officer says that although he observed a traffic violation he actually made a stop for an entirely different reason, and was not concerned with enforcement of the traffic laws, the courts will take him at his word." 286 Or at 494.

then relied on *Tucker* in affirming this court in *State v. Carter/ Dawson, supra,* holding that the stop was justified by the traffic infraction observed by the stopping officer, regardless of the officer's true motive for making the stop.

Here, Campbell testified that he did not have reason to suspect that the driver was committing the offense of driving while suspended, because "I had no reason to believe the registered owner was driving." Rather, he stopped the car because of its description and where it had been parked. However, when asked on cross-examination to "[g]ive us articulated facts, specific articulated facts that the driver of the vehicle that you stopped which turned out to be [defendant] had committed or was involved in a criminal activity at the time you stopped him," he answered, "I don't have any."

■ A peace officer who has probable cause to believe that the registered owner of a vehicle which he sees being driven on a public roadway has a suspended driver's license, has reason to believe that the driver is committing the offense of driving while suspended. Therefore, he would be justified in stopping the vehicle, unless, of course, the driver's observable physical characteristics, such as sex or age, or other circumstances put the officer on notice that the driver is not the vehicle's owner. However, we do not rest our decision on this basis.

■ The observable facts which Campbell articulated in support of his subjective belief that the driver of the car had committed a crime, other than driving while suspended, are sufficient to support an objectively reasonable suspicion. He testified that defendant's car was parked, unattended, in an area that recently had experienced criminal activity. The surrounding businesses were closed and the car's description matched that of "a suspect's vehicle in a robbery." These facts are sufficient to support an objectively reasonable suspicion that, when the car was observed leaving the area shortly thereafter, its driver had committed a crime. It is not determinative that, when questioned on cross-examination, Campbell said that he could not articulate facts supporting his subjective suspicion that the driver of the car had committed a crime. He already had done so.[3]

---

[3] This case is distinguishable from *State v. Messer,* 71 Or App 506, 692 P2d 713 (1984), in which we held that the mere presence of a car parked in an area where all the surrounding businesses are closed will not support an objectively reasonable suspicion that the car's occupants are involved in criminal activity.

Affirmed.