Argued and submitted August 28, reversed and remanded for new trial October 7, reconsideration denied November 27, petition for review denied December 22, 1987
(304 Or 548)

STATE OF OREGON,
*Respondent,*

*v.*

DANIEL LOUIS BUTKOVICH,
*Appellant.*

(C86-09-34258; CA A42706)

743 P2d 752

Lawrence J. Hall, Deputy Public Defender, Salem, argued

the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals from his conviction for possession of a controlled substance and assigns as error the trial court's denial of his motion to suppress evidence. We reverse and remand.

At 2:00 a.m. on August 9, 1986, an officer patrolling a business area in Gresham saw a car occupied by two persons parked in the drive-up lane of a closed fast food restaurant. Because he knew of some burglaries in the recent past in that area, he pulled up behind the parked car, got out and approached defendant's vehicle. As he walked toward the car, he saw a female passenger turn around. When she saw him, she got a "very surprised look on her face" and bent over for several seconds. It appeared to the officer that she was putting something underneath the seat. After a brief introductory conversation with defendant, who was sitting in the driver's seat, the officer told him in a "firm voice" to remove whatever was under the seat. Defendant responded, "It's not a gun, it's just coke." The officer did not draw his weapon, but conceded that, had defendant attempted to drive away, he would have stopped him. The officer ordered defendant and the passenger, defendant's wife, to step out of the car. He reached under the seat and found a razor blade and mirror with lines of white powder, which was cocaine. He then read defendant and his wife the *Miranda* rights and searched the car, with their permission. In a leather purse, he found more cocaine.

The trial court concluded that the officer's conduct constituted a stop and that it was justified, because he had a reasonable suspicion that a crime was being committed. It therefore denied defendant's motion to suppress evidence seized in the car and convicted him in a stipulated facts trial.

A stop is a "temporary restraint of the citizen's liberty" justified by reasonable suspicion of criminal activity. ORS 131.605(5); *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). A stop occurs when a police officer restrains a person's liberty by physical force or a show of authority. *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981); *State v. Warner, supra,* 284 Or at 162. In this case, the officer made a show of authority by ordering defendant to remove things from under the seat and to step out of the car. That was not "mere conversation" and defendant, as a reasonable person faced with the

officer's demand, would not have felt free to ignore it and leave. *See State v. Goaid,* 68 Or App 904, 908, 683 P2d 129 (1984); *State v. Hanna,* 52 Or App 503, 508, 628 P2d 1246, *rev den* 291 Or 662 (1981). We agree with the trial court that a stop had occurred.

The main issue in this case is whether the stop was justified, that is, whether the officer's suspicion that defendant or his wife was engaged in criminal activity was reasonable. Defendant argues that it was not, *citing State v. Messer,* 71 Or App 506, 692 P2d 713 (1984), where we held that a stop was not justified when a police officer saw a knife on the seat between two men sitting in a truck parked in a shopping mall in early morning hours. The state argues to the contrary, relying on a number of cases cited in *Messer.*[1]

■■ The statutory standard for stopping is less than the probable cause standard for an arrest. However, intuition of an officer, without articulable facts indicating some likelihood of criminal activity, does not rise to a reasonable suspicion justifying a stop. ORS 131.605(4); ORS 131.615(1); *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977). The circumstances of this case are less suspicious than those in the cases cited by the state. The *Messer* reasoning is equally applicable here:

> "We are not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped by a passing police officer." 71 Or App at 509. (Footnote omitted.)

■ The state argues that defendant's wife's surprised

---

[1] "In *State v. Anderson,* 46 Or App 501, 612 P2d 309 (1980), *rev den* 289 Or 903, the defendant parked in a store lot at 1:00 a.m. and walked toward the front door of the obviously closed store. In *State ex rel Juv. Dept. v. Lesh,* 49 Or App 373, 619 P2d 935 (1980), school-aged boys pushed a wheelbarrow containing stereo components through a residential neighborhood during school hours. In *State v. Schedler,* 47 Or App 181, 614 P2d 591, *rev den* 290 Or 149 (1980), the officers heard breaking glass immediately before seeing the defendant's automobile driving away at 3 a.m. In *State v. Stiles,* 68 Or App 297, 680 P2d 1016, *rev den* 297 Or 459 (1984), the defendants came through a hedge and a fence carrying a suitcase and other objects. In *State v. Anderberg,* 25 Or App 811, 550 P2d 1248, *rev den* (1976), the officer saw the defendant, who was in a high burglary-incidence area, emerge from the shadows of a church with another man, and one of the two was carrying an object." 71 Or App at 509.

look and furtive movement, taken with the other facts, provide a basis for the stop. When there is evidence that criminal activity has in fact just occurred, such a gesture may provide a basis for believing that the actor has participated in it. *State v. Denny,* 27 Or App 455, 458, 556 P2d 719, *rev den* (1977). However, in the absence of any evidence of criminal activity, furtive gestures provide no basis for a stop. We conclude that the stop was illegal and that the trial court should have suppressed the evidence seized from the car.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

Because I believe that the totality of the circumstances in this case create a reasonable suspicion that defendant and his wife were engaged in criminal activity in their automobile, I would affirm the trial court's denial of defendant's motion to suppress. Accordingly, I respectfully dissent.

Although I agree with the majority that a furtive gesture—alone—ordinarily does not provide a basis for a reasonable suspicion, it is equally clear that such a gesture, in conjunction with other suspicious circumstances, may become the determining factor in establishing reasonable suspicion. Here, the suspicious location of defendant's car next to a closed business at 2:00 a.m., coupled with his wife's startled reaction and her apparent effort to hide something under the seat, provided a reasonable suspicion that defendant or his wife had committed or was committing a crime. This crime could have been, among others, unlawful possession of a firearm, ORS 166.250, second degree burglary, ORS 164.215, or possession of burglar's tools. ORS 164.235. Officer Galbreth—like any reasonable police officer—was justified in stopping defendant to investigate the suspicious conduct. As the trial court noted in its findings, defendant's own remark ("It's not a gun, it's just coke") demonstrates that his wife's conduct would lead a reasonable person to suspect that she was hiding a gun under the seat.