Argued and submitted December 20, 1991, affirmed September 9, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL A. FRIAS,
*Appellant.*

(CR90-135; CA A68396)

836 P2d 1367

Mark A. Sherman, McMinnville, argued the cause and filed the brief for appellant.

Michael M. Pacheco, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns error to the trial court's denial of his motion to suppress. We affirm.

On March 30, 1990, at about 7:30 p.m., Yamhill County Sheriff's deputies Warden and Newberry stopped defendant for a speeding violation. Newberry talked to defendant about the violation and returned to the patrol car to write a citation and run a records check. Meanwhile, Warden stood on the passenger side of defendant's vehicle to the rear of the passenger door. He had a clear view of the interior of the car. He was not trying to hide from defendant, but apparently defendant did not see him.

As Newberry returned to the patrol car, Warden saw defendant check his rearview and side mirrors, as if looking for Newberry. Defendant reached into the glove compartment, removed a rolled-up paper bag and put it in his jacket pocket. He lit a cigarette and checked his mirrors again, then moved the bag from his pocket to his sock. Warden went to the driver's side of the car and asked defendant to step out of the car. Defendant did so, and Warden told him that he wanted to talk to him. He then asked what was in the sock. Defendant said that there was "nothing in the sock" and reached down to his left leg and showed the officer that there was nothing there, then lifted the right pant leg. Warden noticed that defendant was trying to cover up the bag by pulling up his sock. However, Warden was able to see the bag and told defendant that he could see it. Defendant responded by telling Warden that it was a "fix kit" that he was taking to a friend. He took the bag out of his sock and handed it to Warden. Warden testified that he thought that defendant had handed him the bag without being asked for it, but that he might have requested to see it. Warden opened the bag and found two cotton swabs, a spoon, a knife and a syringe. Defendant then told Warden that he did not use drugs and that he could search him and his vehicle if he did not believe him. Warden searched defendant and found a small plastic bindle of methamphetamine in his billfold.

Defendant argues that the trial court erred in denying his motion to suppress. He contends that Warden's

questions exceeded the scope of a permissible inquiry after a traffic stop and that there was no legal justification for opening the paper bag. Defendant is correct that, under *State v. Porter*, 312 Or 112, 119, 817 P2d 1306 (1991), an officer must limit inquiry during a stop for a traffic infraction to matters reasonably related to the infraction, unless there is an independent basis for the officer's action.

There was an independent basis for Warden's actions. No one questions that he was in a place where he had a right to be when he saw defendant's activities in the car. Warden testified that defendant seemed "awfully nervous." He also testified that he knew that a rolled-up bag was a common method of carrying a fix kit and that he had previously seen drugs and drug paraphernalia carried in that manner. In view of Warden's knowledge and experience, his observations supported a reasonable suspicion that defendant was possessing drugs or drug paraphernalia in Warden's presence. That allowed him to question defendant about what he had seen.

Defendant argues that the evidence shows only that Warden saw him make a few furtive gestures and that furtive gestures alone do not provide a reasonable suspicion that a crime has been committed. Whether furtive action by a person may be used to support a reasonable suspicion depends on the particular circumstances. *See State v. Tetro*, 98 Or App 492, 779 P2d 1080 (1989). For example, in *State v. Greer*, 93 Or App 409, 763 P2d 158 (1988), on which defendant relies, in response to a report of a "suspicious vehicle," the police stopped a vehicle parked in a Dairy Queen drive-up window at 3 a.m. When the police parked their patrol cars with the spotlights on next to the defendant's vehicle, they observed persons moving about in the car and bending down. However, those furtive movements could not be considered in deciding if the stop was justified, because the police observed the behavior *after* the actual stop had occurred. 93 Or App at 412.

In *State v. Butkovich*, 87 Or App 587, 743 P2d 752, *rev den* 304 Or 548 (1987), on which defendant also relies, we held that an officer did not have a reasonable suspicion to justify a stop on the basis of his observation of two people sitting in the drive-up lane of a fast food restaurant at 2 a.m. and the vehicle occupant's surprised and "furtive" reaction

when the officer approached the vehicle. We quoted from *State v. Messer*, 71 Or App 506, 509, 692 P2d 713 (1984):

> "We are not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped by a passing police officer.".

Defendant here made more than a general "furtive" response to the presence of a police officer. Warden saw him remove a bag that was rolled in a manner that he knew was commonly used to carry drugs and drug paraphernalia. He then tried to conceal the bag, first in his jacket and then in his sock, while frequently checking the mirrors to make sure that he was not being observed. Although that did not provide probable cause, it did support a reasonable suspicion that justified Warden's inquiry.

Defendant also argues that Warden lacked probable cause to open the paper bag once he had it in his possession.[1] However, before he opened the bag, he had been told by defendant that it contained a "fix kit." That information provided probable cause to support opening the bag.

Defendant's second assignment of error is that the illegalities that occurred during Warden's questioning of defendant and opening of the bag tainted defendant's consent to the search of his vehicle and person. In view of our conclusion that Warden's actions were not illegal, the trial court's conclusion that defendant's consent to the search of his person and vehicle was voluntary was correct. The trial court properly denied defendant's motion to suppress.

Affirmed.

---

[1] Defendant does not argue that, even if Warden had probable cause to believe that the bag contained contraband or evidence of a crime, there were not exigent circumstances to justify opening the bag.