Argued and submitted April 4, reversed and remanded June 11, 1997

# STATE OF OREGON,
*Appellant,*

*v.*

# ANTONIO ARMANDO SANCHEZ,
*Respondent.*

## (CR6-0600; CA A94625)

940 P2d 242

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Paul Johnson Lawrence, Assistant Attorney General.

Ron Brown filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and successfully moved below to have all testimonial and physical evidence suppressed on the ground that he had been unlawfully stopped. The state appeals the trial court's order allowing defendant's motion to suppress. We reverse and remand.

The following facts are not disputed. On the evening of March 11, 1996, the City of Bend Police Department received a complaint about a domestic assault. The officers who responded met with the complainant, defendant's wife, at her residence. She told the officers that she and her husband had been involved in a verbal altercation, that there had been no assault, and that he "had been drinking" and had left the house with their young child, whom he neglected to secure properly in a child safety seat before driving away. Defendant's wife described the type of vehicle her husband was driving and also provided the officers with the license plate number of the vehicle. The police dispatch broadcast all of this information over the police radio; the time was about 11 p.m.

Around 11:10 p.m., Officer Taylor saw what he believed to be defendant's vehicle traveling toward him from the opposite direction. He noticed that the vehicle was the same color as had been described, and, from what he had glimpsed, the vehicle's first three license plate numbers matched the numbers that had been broadcast. Taylor then turned around and attempted to follow defendant's vehicle. He did not activate his overhead lights. By the time Taylor caught up with defendant's vehicle it was parked in front of one of the bays of a lube oil/car wash garage. Taylor saw defendant leave his vehicle and enter the side door of the garage, open up the bay door, get back into his vehicle and drive it into the bay. Taylor parked his marked patrol car and got out to talk to defendant; he did not turn on his emergency or overhead lights.

Taylor approached defendant and asked if he could talk to him. Taylor's only concern in doing so was to ensure the welfare of defendant's child. The rear windows on the

vehicle were tinted and he could not see a child in the vehicle. He did not ask defendant for his driver's license or any identification.

At first, defendant ignored Taylor and walked away from him around to the front of his vehicle. Then defendant asked Taylor what he wanted. Taylor responded that he wanted to know "what had happened." Defendant did not respond at first, but then said that he would cooperate and began talking to Taylor. At that time Taylor observed that defendant had a "wobbly stance," a strong odor of alcohol on his breath, and bloodshot, watery, sleepy looking eyes. Defendant admitted that he had been drinking. Based on those observations, Taylor asked defendant to perform field sobriety tests, and defendant agreed. Taylor testified that he believed that he had probable cause to arrest defendant at that point, and, further, that he would have arrested defendant if he had refused to undergo the sobriety tests. At the conclusion of the field sobriety tests, Taylor arrested defendant for DUII, placed him in the back of his patrol car and read him his *Miranda* rights. While driving to the police station, defendant explained what had happened between him and his wife and further stated that he "knew he shouldn't have been driving."

Before trial, defendant moved to suppress all evidence, physical and testimonial, obtained as a result of defendant's contact with Taylor. He argued that the contact constituted an unlawful stop. The state argued that what had transpired did not rise to the level of a stop and that Taylor and defendant had engaged in "mere conversation." The trial court granted defendant's motion, citing a number of factors, which it said led to the conclusion that the officer had made a sufficient showing of authority to constitute a stop of defendant, and for which the officer lacked the requisite statutory authority. Specifically, the trial court noted that: (1) the officer initiated the contact, (2) that defendant's course of conduct was significantly altered by the officer, (3) that the officer had an unarticulated intent that defendant could not leave; and, that (4) the officer contacted defendant at a public place of business, presumably, after normal business hours.

■     We are not bound by the trial court's conclusion that the officer's contact with defendant constituted a stop. Our inquiry is whether legal principles were correctly applied. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

■     A police officer may stop a person only when he or she reasonably believes that the person committed a crime. ORS 131.615(1).[1] A stop under the statute is a seizure for the purposes of Article I, section 9, of the Oregon Constitution.[2] *State v. Holmes*, 311 Or 400, 408 n 18, 813 P2d 28 (1991). In *Holmes*, the Supreme Court sought to clarify when a seizure occurs within the meaning of Article I, section 9:

> "[A] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *Id.* at 409-10.

The determination whether a police-citizen encounter is a seizure within the meaning of Article I, section 9, "is a fact-specific inquiry into the totality of the circumstances of the particular case." *Id.* at 408.

> "[An] encounter is a seizure' of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as nonoffensive contact if it had occurred between two ordinary citizens." *Id.* at 410.

■     Applying the above stated principles in this case, we conclude that, in contacting and engaging defendant in conversation, Taylor did not touch on defendant's liberty or freedom in any constitutionally significant way. First, the fact

---

[1] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

[2] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

that Taylor initiated the contact with defendant is unremarkable. In *Holmes*, the Supreme Court explained:

> "Under these 'seizure' standards, law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful. A street or public place encounter does not amount to an Article I, section 9 'seizure' merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer. Even physical contact does not transform the encounter into a 'seizure' if it is a normal means of attracting a person's attention (*e.g.*, policeman tapping citizen on the shoulder at the outset to get a citizen's attention)." *Id.* at 410.

Here, Taylor simply approached defendant and asked if defendant would speak with him—defendant had already parked his vehicle of his own volition. Taylor did not order or summon defendant to speak with him.[3] Moreover, defendant does not argue, and there is nothing in the record to suggest, that Taylor's demeanor, tone of voice, or the nature of his language, carried any sort of coercive overtones. We have held that there is nothing constitutionally impermissible about an officer approaching a citizen and requiring the citizen to produce his or her name, date of birth and social security number for the purposes of a warrant check, *State v. Underhill*, 120 Or App 584, 853 P2d 847, *rev den* 318 Or 26 (1993), and the contact here does not rise even to that minimal show of authority. Taylor did not park his car in a way that prevented defendant from leaving, nor did he activate his overhead or emergency lights. *See State v. Miller*, 120 Or App 349, 852 P2d 895 (1993) (the officer did not make a stop when he pulled up in his patrol car behind a vehicle already stopped

---

[3] *See State v. Johnson*, 105 Or App 587, 805 P2d 747 (1991), in which we held that a police officer's request that the defendant "step out [from behind the bush]" and walk 15 feet to where the officer stood, which was away from the direction that the defendant was walking, constituted a show of authority that transformed the conversation into a stop.

on the side of the road, turned on the patrol car's flashing yellow lights, and called out to the defendant who was walking away from him).

In concluding that defendant had been stopped, the trial court reasoned that Taylor significantly altered defendant's course of conduct. The trial court did not explain how it arrived at that conclusion, and we can find no evidence in the record to support it. To the contrary, the uncontroverted evidence shows that Taylor's presence and his initial query did not interfere with defendant's choice of action: when Taylor first contacted defendant, defendant ignored him and walked away around the front of the vehicle. There is nothing in the record to suggest that defendant responded to Taylor involuntarily or under circumstances that were inherently coercive, or that he did not feel free to continue to go about his business and ignore Taylor or to terminate the conversation at any time and walk away.

■ Citing our decision in *State v. Goaid*, 68 Or App 904, 683 P2d 129 (1984), the trial court based its decision in part on the fact that Taylor had an unarticulated intent that defendant could not leave. The state responds that *Goaid* has no precedential value, because in that case we relied on the Supreme Court's opinion in *State v. Roberti*, 293 Or 236, 646 P2d 1341 (1982), which, on remand from the United States Supreme Court, *State v. Roberti*, 298 Or 412, 414, 693 P2d 27 (1984), the Supreme Court withdrew. We agree with the state that *Goaid* does not influence our decision here, because the Supreme Court withdrew the *Roberti* opinion that we relied on in *Goaid* and also disavowed that decision at a later date.[4] *State v. Smith*, 301 Or 681, 685 n 1, 752 P2d 894 (1986). Even assuming that Taylor did not intend to allow defendant to leave until he had received satisfactory answers to his questions or ensured that defendant's child was safe, an officer's subjective intent has no bearing on the nature of our review. As the Supreme Court stated in *Holmes*, the proper test is an objective one, and we limit our review to objective facts:

---

[4] Moreover, *State v. Roberti*, 298 Or 412, 693 P2d 27 (1984), was decided under the federal constitution. The question here arises solely under the Oregon statutes.

"Any test intended to determine what constitutes a seizure of a person must be expressed in terms that can be understood and applied by the officer. The 'objectively reasonable' requirement in part (b) of our formulation furthers that purpose. *An officer should only be responsible for anticipating the effects of his action on an objectively reasonable person.*" *Id*. at 410 n 19. (Emphasis supplied.)

Finally, the trial court noted the fact that the officer contacted defendant at a business after normal business hours. We note first, that there is no testimony or evidence of any kind in the record bearing on the question of whether the lube oil/car wash garage was open to the public at that hour of the evening. However, even assuming that the garage was closed to the public, there is nothing remarkable about the setting that contributed to creating an inherently coercive atmosphere.

■ Under the totality of the circumstances, we conclude that the police officer conducted himself in a manner that would be reasonably perceived as nonoffensive; the encounter was a conversation without any restraint of liberty, *i.e.*, a noncoercive encounter requiring no justification. It is well established that law enforcement officers may approach persons on the street or in public places, question them, and even accompany them to another location without implicating Article I, section 9. By the time Taylor arrested defendant, he had sufficient information to believe that defendant had driven under the influence of alcohol. However, no seizure of defendant's person occurred under the Oregon Constitution when the officer contacted defendant and spoke with him about the altercation that he had had earlier with his wife. The trial court erred in granting the motion to suppress.

Reversed and remanded.