POWERS, J.
*83 Defendant appeals from a judgment of conviction for possession of heroin, ORS 475.854, and possession of a controlled substance in Schedule III, ORS 475.752(3)(c), assigning error to the trial court's denial of his motion to suppress. Defendant argues that the trial court erred when it determined that the seizure of defendant was justified by the officer safety exception to the warrant requirement under Article I, section 9, of the Oregon Constitution. We agree. The trial court erred in determining that the seizure was justified by the deputy's reasonable suspicion, based on specific and articulable facts, that defendant might pose an immediate threat of serious physical injury to the deputy. Accordingly, we reverse and remand.
We review the denial of defendant's motion to suppress for legal error and, in doing so, "we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." State v. Maciel-Figueroa , 361 Or. 163, 165-66, 389 P.3d 1121 (2017). To the extent that the trial court did not make express findings regarding disputed facts, we will presume that the court found the facts in a manner consistent with its ultimate conclusion, provided that the evidence would support such findings. Id. at 166, 389 P.3d 1121. We describe the facts below in a manner consistent with those standards of review.
Deputies Armstrong and Walker were both driving in separate patrol vehicles toward a rock quarry to complete some night training. On the way to the quarry, a vehicle in front of them turned onto a gravel logging road. Armstrong thought that the vehicle turning onto the road was suspicious because it was a small vehicle and it turned onto a *1116 gravel logging road, but both deputies continued driving toward the quarry. When the deputies reached the quarry, they discovered that the gate to the quarry was locked, so the deputies turned around, headed back in the direction they came, and turned onto the gravel logging road to do their training.
Both patrol vehicles turned onto the gravel road, a narrow road slightly wider than two vehicles. Armstrong was in the lead vehicle, with Walker about three car-lengths *84 behind. Armstrong saw the small vehicle stopped, facing toward him, with its headlights on. As Armstrong continued to drive toward the vehicle, the vehicle started moving and slowly passed him. As the vehicle passed Armstrong's vehicle, both defendant and Armstrong started to roll down their windows, but Armstrong did not attempt to stop the vehicle.
Then, as the small vehicle approached Walker's vehicle, Walker rolled down his window without turning on his overhead lights, spotlight, or siren. Walker asked defendant, in a conversational tone, if defendant would be willing to talk to him. Defendant said that he would, so Walker pulled his vehicle forward a few more feet so that there was enough room to get out of his vehicle. As Walker walked back toward defendant's vehicle, he observed defendant quickly reach toward the passenger side of the vehicle. Because it was dark, Walker was unable to see what defendant was reaching for and was unable to see into the vehicle. In a commanding tone, Walker then ordered defendant to show him his hands. Walker testified that he requested to see defendant's hands because he feared for his safety:
"Being that it's a-there's no streetlights or anything in that area, very little ambient light that night, I couldn't see inside the cab. That area is a common area for people to hunt and go shooting.
"Also, it's common for illegal dumping and drug use.
"Being that I didn't know [defendant] and he didn't know me-any time someone makes a quick movement like that, it does startle me because of my officer safety concern that he could be reaching for some type of weapon."
Defendant complied with Walker's request and placed his hands on the steering wheel. Walker then turned on his flashlight and observed foil and a rolled business card lying on the passenger seat, and Walker testified that both items indicated drug use. Defendant said that Walker had "caught him" and handed over a clear plastic cigarette package with two white pills and two orange pills, a piece of foil, and the rolled business card.
Defendant was charged with one count of unlawful possession of heroin and one count of unlawful possession of a controlled substance in Schedule III. Before trial, *85 defendant filed a motion to suppress, arguing that "any and all" evidence should have been suppressed because Walker unlawfully seized him by initiating the encounter without reasonable suspicion of a crime or probable cause that a traffic violation had occurred. The state acknowledged that Walker's order to defendant to show him his hands constituted a seizure and that Walker did not have reason to believe that a crime or violation had occurred, but the state contended that the seizure was justified under the officer safety exception to the warrant requirement. The trial court agreed with the state's position:
"In this case, being on a dark logging road where drivers often have weapons, a dark vehicle, a sudden movement to the passenger car seat where a firearm could be located and a narrow passageway between two vehicles which are in close proximity would create a reasonable concern for officer safety."
Following the trial court's denial of defendant's motion to suppress, defendant waived his right to a jury and proceeded to a bench trial based on the facts presented at the suppression hearing. The trial court convicted defendant of both offenses.
On appeal, defendant argues that he was seized when Walker ordered defendant to show his hands, that the seizure was not supported by reasonable suspicion of criminal activity or probable cause of a traffic violation, and that the seizure was not justified by the officer safety exception. Defendant contends that officers may not elevate a *1117 police-citizen encounter from mere conversation to a seizure if, during the mere conversation, the officer develops officer safety concerns,[1] but submits that, even if the officer safety *86 doctrine can serve as a justification for an encounter that begins as mere conversation, Walker's safety concerns here were not objectively reasonable. The state acknowledges, as it did at the suppression hearing, that Walker's order to defendant to show his hands constituted a seizure and that Walker did not have reasonable suspicion of criminal activity to justify that seizure, but the state argues that Walker's concerns for his safety were both subjectively and objectively reasonable and thus satisfy the officer safety exception to the warrant requirement.[2] Because we conclude that Walker's safety concerns were not objectively reasonable under the circumstances, we need not resolve the parties' dispute regarding the applicability of the officer safety doctrine to mere conversation encounters.[3]
At the outset, we accept the state's concession that defendant was seized when Walker ordered defendant to show his hands. See, e.g. , State v. Ruiz , 196 Or. App. 324, 327, 101 P.3d 824 (2004), rev. den. , 338 Or. 363, 109 P.3d 797 (2005) (holding that the defendant was seized when an officer requested that he remove his hand from his pocket); State v. Rudnitskyy , 266 Or. App. 560, 564, 338 P.3d 742 (2014), rev. den. , 357 Or. 112, 346 P.3d 1213 (2015) (holding that the defendant was seized when a deputy ordered the defendant and the passenger who were sitting in a parked car to place their hands on the dashboard).
*87 In order to be lawful under Article I, section 9, a warrantless search or seizure must fall within one of the few established exceptions to the warrant requirement. State v. Lambert , 263 Or. App. 683, 691-92, 328 P.3d 824, modified on recons. , 265 Or. App. 742, 338 P.3d 160 (2014). One of those exceptions is the officer safety exception, which was articulated in State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987) :
" Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."
For the officer safety exception to apply,
"(1) the officer's actions must have occurred during a lawful encounter; (2) the *1118 officer must have had a reasonable suspicion that the individual posed an immediate threat of serious physical injury; and (3) the steps the officer took to protect the officer or others must have been reasonable."
State v. Rodriguez-Perez , 262 Or. App. 206, 212, 325 P.3d 39 (2014). The state must prove "not only that the officer subjectively believed that the defendant posed a threat, but also that the officer's belief was objectively reasonable." Id. at 213, 325 P.3d 39.
On appeal, the parties do not dispute that Walker subjectively was concerned for his safety. Rather, they dispute whether that belief was objectively reasonable under the circumstances. In determining whether an officer's belief was objectively reasonable, we consider "the totality of the circumstances as they reasonably appeared to the officer[ ] at the time." State v. Jackson , 190 Or. App. 194, 199, 78 P.3d 584 (2003), rev. den. , 337 Or. 182, 94 P.3d 877 (2004). An officer's subjective belief that a defendant posed a threat is not objectively reasonable if it is based "on intuition or a generalized fear that the person may pose a threat to the officer's safety"; rather, it "must be based on facts specific to the particular person." Id. at 198, 78 P.3d 584.
*88 We have emphasized that more than a single suspicious or furtive movement is necessary to give rise to an objectively reasonable concern for officer safety. See State v. Davis , 282 Or. App. 660, 668, 385 P.3d 1253 (2016) (rejecting asserted officer safety justification because, "[a]lthough defendant's initial movement toward the floorboard of his truck may have raised [the officer's] subjective suspicion, it was not accompanied by other conduct that would give rise to an objectively reasonable concern for safety"); State v. Amell , 230 Or. App. 336, 345, 215 P.3d 910 (2009) (concluding pat-down not justified on officer safety grounds where, despite the defendant's lie about whether his license was suspended and despite the officer's observation of a "digging movement" by the defendant-which officer believed to be consistent with retrieving a weapon-the "defendant was cooperative at all times, did not show hostility, and made no suspicious movements during his interaction with the police"). If a suspicious movement is accompanied by "other conduct that provoke[s] alarm (disobedience of police instruction, conduct inconsistent with inquiry, reluctance to follow police instructions)," however, it can give rise to valid officer safety concerns. Amell , 230 Or. App. at 342, 215 P.3d 910.
Here, Walker articulated generalized facts that gave rise to his subjective belief that defendant posed a threat to his safety. Walker did not, however, connect those general observations-that the encounter took place on a gravel road frequented by hunters, shooters, people illegally dumping trash, and drug users-to anything specific to defendant. The only facts that Walker articulated that were specific to defendant were that defendant made a single movement toward the passenger side of the car during a nighttime encounter. There is no evidence of "other conduct that provoke[s] alarm" specific to defendant that accompanied defendant's suspicious movement that could have given rise to an objectively reasonable concern for safety. See id . For instance, there were no indications that defendant appeared nervous or agitated, or that he was anything but compliant leading up to the moment he was seized. Nor is there any evidence that defendant disobeyed any lawful order or demonstrated any reluctance to follow instructions. Thus, the state failed to show that, under the totality of the *89 circumstances at the time of the seizure, specific and articulable facts gave rise to a reasonable suspicion that defendant "might pose an immediate threat of serious physical injury." Bates , 304 Or. at 524, 747 P.2d 991. We conclude that the seizure of defendant was not justified by the officer safety exception to the warrant requirement, and thus that the trial court erred by denying defendant's motion to suppress.
Reversed and remanded.

Generally, police-citizen encounters have been divided into three categories: "(1) 'mere conversation,' that is, noncoercive encounters that are not 'seizures' and, thus, require no justification under Article I, section 9 ; (2) 'stops,' a type of seizure that involves a temporary restraint on a person's liberty and that violates Article I, section 9, unless justified by, for example, necessities of a safety emergency or by reasonable suspicion that the person has been involved in criminal activity; and (3) 'arrests,' which are restraints on an individual's liberty that are steps toward charging individuals with a crime and which, under Article I, section 9, must be justified by probable cause to believe that the arrested individual has, in fact, committed a crime." State v. Ashbaugh , 349 Or. 297, 308-09, 244 P.3d 360 (2010).

The state also asserts that defendant's appellate arguments regarding officer safety are not preserved for our review. To the extent that we reach defendant's officer safety arguments, we disagree. As part of its response to the motion to suppress, it was the state, not defendant, that first raised the officer safety exception to the trial court. Although the bulk of defendant's argument was focused on other issues, defendant did argue that, even though Walker testified that he writes down everything that is important, there was nothing in his written report about concerns for his safety. Moreover, as described above, the trial court expressly ruled on the officer safety exception. Given that record, we are satisfied that the underlying principles of preservation have been met in this case. See, e.g. , State v. Vanornum , 354 Or. 614, 632, 317 P.3d 889 (2013) (observing that preservation principles ensure that "trial courts have an opportunity to understand and correct their own possible errors and that the parties are not taken by surprise, misled, or denied opportunities to meet an argument" (internal quotation marks and citation omitted) ).

Compare State v. Shaw , 230 Or. App. 257, 265-66, 215 P.3d 105, rev. den. , 347 Or. 365, 222 P.3d 1091 (2009) (concluding that "mere conversation" is a "lawful encounter" such that the officer safety exception can apply), with State v. Messer , 71 Or. App. 506, 510, 692 P.2d 713 (1984) (concluding that officer safety exception did not apply where officer and the defendant were engaged in mere conversation, because mere conversation "gives an officer no right to exercise any official authority").