Argued and submitted February 28, 2020, reversed and remanded
January 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

C. J. G.,
aka C. G.,
*Defendant-Appellant.*

Jackson County Circuit Court
17CR55576; A168295

481 P3d 1011

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of an unlawful seizure, arguing that neither officer safety concerns nor reasonable suspicion justified his seizure. The state argues that the trial court did not err in denying defendant's motion to suppress, because defendant's seizure was justified by both officer safety concerns and reasonable suspicion of a crime. *Held*: Because the facts, considered in their totality, do not justify reasonable suspicion that defendant posed an immediate threat of serious physical injury to the officer—nor do the facts support a reasonable suspicion that defendant was involved in illegal drug activity—the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Lisa C. Greif, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Beth Andrews, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894 (2015), *amended by* Or Laws 2017, ch 706, § 15; Ballot Measure 110 (2020).[1] Before trial, defendant filed a motion to suppress evidence obtained as a result of a purportedly unlawful seizure. After the trial court denied that motion, defendant entered a conditional guilty plea. On appeal, defendant assigns error to the trial court's denial of his motion to suppress, arguing that neither officer safety concerns nor reasonable suspicion of a crime justified his seizure.

For the reasons that follow, we conclude that neither officer safety nor reasonable suspicion of a crime justified defendant's seizure and, therefore, that the trial court erred when it denied defendant's motion to suppress. Accordingly, we reverse and remand.

## I.　BACKGROUND

"We review the denial of defendant's motion to suppress for legal error and, in doing so, 'we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them.'" *State v. Meeker*, 293 Or App 82, 83, 427 P3d 1114 (2018) (citing *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017)). We state the facts from the suppression hearing in accordance with that standard.

Medford Police Corporal Oller observed defendant's vehicle "kind of creeping in to a parking spot" in front of a Purple Parrot store around 10 p.m. Oller "observed the vehicle for approximately a minute," during which the "vehicle never turned off," and "[n]o one ever got out of the car." Oller had "past experiences in multiple Purple Parrots around the city" and knew it was "not uncommon" for people to use or buy drugs in such locations. Oller approached the passenger side of defendant's vehicle, shined his flashlight inside, and saw two men, who looked "startled." Oller "immediately recognized [defendant]" in the driver's seat. Oller had

---

[1] The 2017 and 2020 amendments to ORS 475.894 apply to acts committed after those committed by defendant and, therefore, do not affect our opinion in this case.

previously "arrested [defendant] for methamphetamines," "knew that he carried replica weapons," and had "heard on the street" that defendant carried weapons.

As Oller shined his flashlight, he saw defendant clutch "a white colored item," which defendant then "shoved" into a jacket pocket. Oller believed that the white object was "some sort of contraband" because "meth pipes are coated in white residue, bags of methamphetamine are white, bags of cocaine are white, [and] pills are white." Oller did not think that the object was a weapon, but "became concerned about weapons" when defendant's hand went into the pocket, because defendant had "been reported to carry weapons." Defendant's hand remained in his pocket for roughly three seconds until Oller told him to "[t]ake your hand out of your pocket." Defendant complied, but no longer had the white object in his hand. When defendant's hand came out of his pocket, Oller "honestly c[ould]n't remember" where defendant put his hands but "might have" instructed defendant to put his hands on the steering wheel.

After Oller instructed defendant to take his hand out of his pocket, he observed that the front seat passenger closely resembled a person whom Oller knew to have an active arrest warrant. Oller called to the passenger by that person's name, to which the passenger responded, "No, that's not me," and told Oller his name was Malback. Oller ran Malback's name and discovered that he "actually had a warrant for his arrest." When a backup officer arrived, Oller arrested Malback, searched his person, and discovered a container with heroin residue inside. At some point thereafter, Malback told Oller that defendant "had about a half gram of methamphetamine." Based on that information, Oller seized defendant's jacket, obtained a search warrant, and discovered a pipe in the pocket, which tested positive for methamphetamine. Defendant was subsequently convicted for unlawful possession of methamphetamine, ORS 475.894 (2015).

Before trial defendant moved to suppress evidence obtained as a result of an unlawful seizure. In a letter opinion, the trial court denied defendant's motion, determining, among other things, that "Defendant was stopped when he

was told to place and keep his hands on the steering wheel. That stop was reasonable based primarily on officer safety concerns."

On appeal, neither party disputes the trial court's determination that a seizure occurred when Oller told defendant to place his hands on the steering wheel. Rather, defendant argues that neither officer safety concerns nor reasonable suspicion of a crime justified that seizure. The state argues that the trial court properly denied defendant's motion to suppress, because defendant's seizure was justified by both officer safety concerns and reasonable suspicion of a crime.[2]

## II.   ANALYSIS

### A.   *Officer Safety*

We begin our analysis by examining whether officer safety justified defendant's seizure. "In order to be lawful under Article I, section 9, a warrantless search or seizure must fall within one of the few established exceptions to the warrant requirement." *Meeker*, 293 Or App at 87. One of those exceptions is the officer safety exception set forth in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987):

"Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

For the officer safety exception to apply, the state must prove "not only that the officer subjectively believed that the defendant posed a threat, but also that the officer's belief was objectively reasonable." *Meeker*, 293 Or App at 87 (citing *State v. Rodriguez-Perez*, 262 Or App 206, 212-13, 325 P3d 39 (2014)).

---

[2] On appeal, the state does not argue that the later seizure and search of defendant's jacket—which was based on Malbeck's statements to Oller—was attenuated from the earlier seizure of defendant, *i.e.*, when defendant was instructed to place and keep his hands on the wheel.

In this case, neither party disputes that Oller was subjectively concerned for his safety. Rather, they dispute whether Oller's belief was objectively reasonable. "To be objectively reasonable, the officer's safety concerns must be based on facts specific to the particular person * * *." *Rodriguez-Perez*, 262 Or App at 213 (internal quotation marks omitted). Our task on review is to determine whether "'any of the circumstances confronted by the officer either individually or collectively justify a reasonable suspicion that the defendant posed an immediate threat to'" Oller or others present.[3] *State v. Thomas*, 276 Or App 334, 337, 367 P3d 537 (2016) (quoting *Bates*, 304 Or at 525).

With regard to officer safety, the state contends that,

> "Considering the totality of the circumstances of the stop—[1] it was night; [2] defendant was parked in a popular location for drug activity; [3] the passenger in the vehicle was a person with an active warrant; [4] Oller knew defendant from a prior arrest; [5] Oller had heard that defendant carried weapons; and [6] defendant made a furtive gesture by reaching into his jacket pocket and then leaving his hand tucked inside—Oller's concern for officer safety was reasonable."

We examine those facts individually and then collectively, and we conclude that they do not justify a reasonable suspicion that defendant posed an immediate threat of serious physical injury to Oller.

To begin with, the fact that Oller's encounter happened at night adds little to justify officer safety concerns. *State v. Blackstone*, 289 Or App 421, 433, 410 P3d 354 (2017) ("[T]he late hour * * * is definitely a relevant circumstance, but it is not unlawful to be out late at night, and the hour alone is not enough to tip the scales.").

The fact that defendant was parked in the Purple Parrot parking lot is also entitled to little or no weight. Oller testified generically that he had "past experiences in multiple Purple Parrots around the city" and knew it was "not

---

[3] The state does not argue—nor does the record show—that Oller reasonably believed that defendant posed an immediate threat of physical injury to any others present.

uncommon" for people to use or buy drugs in such locations. But Oller did not articulate specific facts particular to *this* location, as is required to support the officer safety exception. At any rate, though "confronting a suspect in a high-crime area can contribute to officer-safety concerns, such a location has never been regarded as sufficient to support the officer-safety exception unless there were also a significant number of other indicia of danger." *State v. Jimenez*, 263 Or App 150, 159, 326 P3d 1222, *aff'd*, 357 Or 417, 353 P3d 1227 (2015). We do not see such indicia here.

Similarly, the fact that the passenger, Malback, had an active warrant did not justify seizing defendant for officer safety reasons. The record reflects that Oller identified the passenger *after* instructing defendant to put his hands on the wheel—*i.e.*, after deciding to seize defendant. Even if Malback's active warrant could justify officer safety concerns about defendant, it could not do so retroactively. *See Bates*, 304 Or at 525 (Officer safety inquiry requires us to analyze "the circumstances as they reasonably appeared *at the time that the decision was made*." (Emphasis added.)). Moreover, nothing in the record identifies the basis for Malback's warrant, much less that the warrant indicated that defendant posed an immediate threat of physical injury to Oller.

Oller also testified that he knew defendant from a past drug arrest and "became concerned" about weapons because he knew that defendant had "carried replica weapons" and had "heard on the street" that defendant carried weapons to protect himself. Even coupled with Oller's knowledge of defendant's past drug activity, knowledge of defendant's replica weapons or unattributed assertions "heard on the street" do not indicate that defendant was dangerous at the time he was seized. *See State v. Steffens*, 250 Or App 742, 750, 282 P3d 888 (2012) ("An officer's knowledge of the defendant's past conduct is relevant to the officer-safety inquiry; however, where past conduct is not coupled with any indication that the defendant is *currently* dangerous, it is unlikely to be determinative." (Emphasis in original.)).

Finally, the fact that defendant reached into a jacket pocket is not alone sufficient to support officer safety concerns. *See Meeker*, 293 Or App at 88 ("We have emphasized

that more than a single suspicious or furtive movement is necessary to give rise to an objectively reasonable concern for officer safety.").

Considered collectively, we conclude that the foregoing circumstances—defendant's single movement of reaching into his jacket pocket, in conjunction with all the other facts identified by the state—do not support a reasonable suspicion that defendant posed an immediate threat to Oller at the time of the seizure. *See, e.g.*, *id.* (officer safety exception not justified where officer seized defendant by ordering him to show his hands when defendant was in his car, at night, in an area frequented by drug users, and made a single suspicious movement).

We therefore conclude that the trial court erred when it denied defendant's motion based on officer safety concerns.

B.   *Reasonable Suspicion of Criminal Activity*

We turn next to examining whether defendant's seizure was justified by reasonable suspicion of criminal activity. "An officer has reasonable suspicion when the officer 'can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime.'" *State v. Kreis*, 365 Or 659, 665, 451 P3d 954 (2019) (quoting *Maciel-Figueroa*, 361 Or at 165). "The officer must have a subjective belief that the person stopped has committed, or is about to commit, a crime, and that belief must be objectively reasonable under the totality of the circumstances." *Kreis*, 365 Or at 665.

In this case, we do not understand defendant to dispute that Oller subjectively believed that defendant was committing a crime. Thus, our task on review is to determine whether Oller's belief was objectively reasonable under the totality of the circumstances.

The state contends that "the seizure was justified because Oller had an objectively reasonable belief that defendant was involved in illegal drug activity." In support of that contention, the state enumerates the following facts:

"[1] Oller knew that the parking lot where defendant was parked was a place where it was 'not uncommon' for people to engage in drug activity"; "[2] defendant also idled in the parking lot for over a minute without anyone exiting the vehicle"; "[3] Oller had previously arrested defendant for crimes related to methamphetamine use"; "[4] defendant was startled upon seeing Oller and immediately shoved a white object into his jacket"; "[5] Oller believed that the white object was contraband because many items of contraband are white"; and "[6] Oller recognized the passenger as a person with an active warrant."

As explained below, we conclude that those facts, considered in their totality, do not support a reasonable suspicion that defendant was involved in illegal drug activity.

Defendant's presence in a Purple Parrot parking lot—where it was "not uncommon" for people to engage in drug activity—is of little consequence here. As noted above, Oller generically testified that he knew about past drug crimes at "multiple Purple Parrots around the city," but he did not specifically identify defendant's location as a high crime area. In any event, "[w]e have repeatedly said that a person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that that person is himself or herself engaged in drug activity." *State v. Davis*, 286 Or App 528, 536, 400 P3d 994 (2017) (citation and internal quote marks omitted); *see also State v. Zumbrum*, 221 Or App 362, 370, 189 P3d 1235 (2008) ("Neither the late hour nor the high crime nature of the area tells us whether *this* defendant is likely to be a criminal." (Emphasis in original; brackets and internal quotation marks omitted.)).

Similarly, the fact that Oller observed defendant's car "idl[ing] in the parking lot for over a minute without anyone getting out" is of almost no consequence. "We are not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped." *State v. Messer*, 71 Or App 506, 509, 692 P2d 713 (1984); *see also State v. Moya*, 97 Or App 375, 377-78, 775 P2d 927 (1989) (Officers lacked reasonable suspicion for stop where defendant was sitting in a parked car in an area of "extensive

drug activity," "made furtive movements consistent with drug activity," "looked surprised to see [the officers]," and "appeared to move [an] object from her lap into a purse.").

Although Oller testified that he had previously arrested defendant for methamphetamine use, "prior arrests or convictions—even recent ones—without more, do not provide reasonable suspicion that a person is currently engaged in illegal conduct." *Steffens*, 250 Or App at 753; *see also State v. Bertsch*, 251 Or App 128, 134-35, 284 P3d 502 (2012) ("Nor is it reasonable to believe that a person possesses drugs because he or she has been convicted of a drug crime in the past.").

The fact that defendant was startled to see Oller and shoved a white object into his jacket does not support an objectively reasonable suspicion of criminal activity. Indeed, "[t]here is nothing remarkable about * * * appearing startled at a sudden confrontation with the police." *Moya*, 97 Or App at 378. And though Oller surmised that the white object was "some sort of contraband" because "meth pipes are coated in white residue, bags of methamphetamine are white, bags of cocaine are white, [and] pills are white," he did not testify "as to any characteristic of the object itself that made it reasonable to believe that the object was a weapon or something illicit." *State v. Robles*, 229 Or App 287, 292, 211 P3d 311 (2009). And "in the absence of any evidence of criminal activity, furtive gestures provide no basis for a stop." *State v. Butkovitch*, 87 Or App 587, 591, 743 P2d 752 (1987).

Finally, as noted above, the fact that Oller subsequently discovered Malback's active warrant cannot retroactively justify defendant's seizure. Furthermore, the state does not explain—nor does the record indicate—how the *passenger's* warrant justifies a reasonable suspicion that *defendant* was engaged in illegal drug activity.

In sum, the foregoing facts—considered in their totality—do not support an objectively reasonable suspicion that defendant was involved in illegal drug activity at the time of the seizure. *See, e.g., id.* at 589-91 (Officers lacked reasonable suspicion for stop where two people sat in a parked vehicle in the drive-up lane of a closed fast food restaurant at 2:00 a.m. in area of recent burglaries,

and passenger looked "very surprised" to see officers, made "furtive movement," and appeared to be "putting something underneath the seat."). We therefore conclude that, on this record, it was error to deny defendant's motion on those grounds.

## III.  CONCLUSION

We conclude that, because neither officer safety nor reasonable suspicion justified defendant's seizure, the trial court erred when it denied defendant's motion to suppress evidence obtained as a result of that seizure. Accordingly, we reverse defendant's conviction and remand.

Reversed and remanded.