Argued and submitted November 23, 2020, reversed and remanded
June 30, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIK RUBEN LORA,
*Defendant-Appellant.*

Jackson County Circuit Court
19CR07526; A170898

492 P3d 757

Defendant appeals a judgment of conviction for one count of unlawful delivery of methamphetamine, ORS 475.890(2). On appeal, defendant contends that the trial court erred in denying his motion to suppress. He argues that police unlawfully arrested him when they handcuffed him without a sufficient officer-safety justification, and that that unlawful arrest directly resulted in the discovery of two objects containing methamphetamine. The state responds that officer safety concerns justified handcuffing defendant. Alternatively, the state argues that, even if defendant is correct that he was unlawfully arrested when the officers handcuffed him, that illegality did not lead to the discovery of the first object containing methamphetamine. *Held*: The trial court erred. The state did not meet its burden to establish that the officers' subjective safety concerns were objectively reasonable. Thus, officer safety concerns did not justify handcuffing defendant. Additionally, it was only after handcuffing defendant that officers discovered that first object contained methamphetamine.

Reversed and remanded.

David J. Orr, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for one count of unlawful delivery of methamphetamine, ORS 475.890(2). Defendant entered a conditional no contest plea reserving his right to seek appellate review of the trial court's denial of his motion to suppress evidence—*viz.*, two objects that contained methamphetamine. On appeal, defendant assigns error to that denial, arguing that police unlawfully arrested him when they handcuffed him "without a sufficient officer-safety justification," and that that "unlawful arrest directly resulted in the discovery" of the two objects containing methamphetamine. The state responds that "officer safety concerns justified handcuffing defendant." The state also contends that, in any event, "even if defendant is correct that he was unlawfully arrested when the officers handcuffed him * * * that illegality did not lead to the discovery of the first package of methamphetamine."

For the reasons that follow, we conclude that officer safety concerns did not justify handcuffing defendant. We also reject the state's argument that the unlawful handcuffing defendant did not lead to the discovery of the first package of methamphetamine. Therefore, we reverse and remand.

## I. BACKGROUND

"We review the denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them." *State v. Bailey*, 307 Or App 782, 783, 479 P3d 304 (2020) (internal quotation marks omitted). We state the facts in accordance with that standard.

Medford Police Detective Schwab received information that defendant was transporting a "large amount" of methamphetamine from Bakersfield, California, to Medford, Oregon, and that he would be doing so in a white Honda SUV or minivan. Schwab reviewed defendant's Facebook profile and criminal history. He learned that defendant "had gang ties" and also had been "arrested for gang involvement and firearms."

Around 1:00 a.m., a different officer located a van matching the description of defendant's vehicle and saw it turn without signaling. Several police cars pursued the van and initiated a traffic stop. The van pulled into a parking lot and parked. At least six officers were on scene to assist with the stop, though the precise number of officers is unclear from the record.

One of the officers approached the van and spoke to the driver. The driver admitted that she had no license and that the van was uninsured. She provided a California identification card. The van's windows were tinted. The van had one passenger in the front seat and two passengers in the back seat, one of whom was lying down and covered by a blanket. Initially, however, it was unclear to the officers how many occupants the van had, and it was difficult to see into the back of the van.

Officers then asked the passengers in the backseat to get out of the van. Defendant and the other passenger in the backseat got out of the van.

When defendant got out of the van, Schwab and another officer, Pierce, observed what Schwab described as a "little pocketknife" on defendant's belt. Schwab took the knife.

Schwab asked defendant if the officers could "search [defendant] for drugs or weapons." Defendant consented.

Pierce then started to "patdown" defendant. While patting down defendant, he felt a "large," "odd," and "hard" object on the front of defendant's waistband. At that time, Pierce had "no idea" what it was and did not ask defendant what it was but could "just tell it was a large foreign object."

Pierce then motioned to Schwab for assistance handcuffing defendant. Schwab helped Pierce handcuff defendant, after which Pierce conducted a "more expansive patdown" and discovered another object in defendant's sleeve, similar to the object in defendant's waistband.

Police later learned that the two objects contained methamphetamine, and defendant was charged with one count of unlawful delivery of methamphetamine, ORS

475.890, and one count of unlawful possession of methamphetamine, ORS 475.894(2)(b).

Defendant moved to suppress the evidence—*viz.*, the two objects that contained methamphetamine—as the "proceeds of an unlawful warrantless arrest."[1] The state argued, among other points, that officer safety justified the officers' actions during the stop.

During the hearing on the motion to suppress, Schwab explained that, initially, if defendant "didn't want to consent to any patdown, he would have been able to walk away," because officers "didn't have anything to hold him."

About the conduct of the van's occupants during the traffic stop, Pierce testified that everyone in the van, including defendant, was "pretty cooperative," that police did not face "any form of resistance at all or non-compliance" from any of the van's occupants, and that "no one was even remotely argumentative at any point." Schwab testified that defendant was "very cooperative." Another officer testified that he did not observe any "threatening behavior" or "aggressive language" during the traffic stop.

Nevertheless, during the hearing, Schwab and Pierce identified several features of the traffic stop that raised safety concerns for them prior to handcuffing defendant, including:

- Defendant's prior arrests for "firearms" and defendant's "gang involvement," because people who "carry guns could hurt" police, and "[p]eople involved in gangs don't like the police usually";

- That it was night, because "it's easier for people to conceal things" and "[i]t's harder for us to see what they have in their hands, you know, what's in their vehicle";

- That the van had multiple occupants and tinted windows, and the officers had difficulty seeing the passengers, one of whom was covered by a blanket at the time of the stop;

---

[1] Defendant also sought suppression of any "derivative evidence obtained therefrom."

- The possibility that defendant was a "large quantity narcotics dealer"; and

- That defendant had a knife on his belt when he exited the van.[2]

Additionally, Pierce testified that, although he had "no idea" what the object that he discovered on defendant was during the "patdown," the area it was located—defendant's waistband—was an area commonly used to conceal weapons because it is "the most accessible" and "most concealable" on a person's body.[3]

After the hearing, the trial court denied defendant's motion to suppress.

Defendant then entered a conditional no contest plea to one count of unlawful delivery of methamphetamine. The trial court entered a judgment of conviction on that count and dismissed the charge of unlawful possession of methamphetamine. Defendant appeals that judgment.

## II.   ANALYSIS

### A.   *The Officer-Safety Doctrine*

On appeal, as noted above, defendant argues that he was unlawfully arrested when Pierce and Schwab handcuffed him "without a sufficient officer-safety justification." The state contends that the trial court correctly denied defendant's motion to suppress because "the officers' handcuffing of defendant was justified by their objectively reasonable concerns for their safety."

"In order to be lawful under Article I, section 9, a warrantless search or seizure must fall within one of the

---

[2] Pierce testified that the knife caused him to have safety concerns. Schwab, however, testified that the "little pocketknife" did not cause him any safety concerns.

[3] When Pierce was asked whether he "thought" the object he discovered on defendant "was a weapon," Pierce responded, "I had no idea what it was."

When Pierce was asked if he had reason to believe the object was a weapon, Pierce responded:

"Well, when your attention is diverted and you're trying to articulate an object *** on someone's person, not only does it become a search with the articulation, but it also divides your attentions and leaves you susceptible to assault."

few established exceptions to the warrant requirement." *State v. Goguen*, 308 Or App 706, 709, 481 P3d 1011 (2021) (internal quotation marks omitted). In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court held:

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

Under the officer-safety doctrine, "the state bears a two-part burden of proof and persuasion." *State v. Ramirez*, 305 Or App 195, 205, 468 P3d 1006 (2020). First, the state must prove the subjective component of officer safety. For that, "the state bears the burden of establishing that: (1) based on specific and articulable facts known to the officer, the officer (2) had subjective reasonable suspicion, that (3) the defendant posed an immediate threat, and (4) the threat was of serious physical injury." *Id.* Second, once the state has met its burden on the subjective component, "it then bears the burden to prove that, under the totality of the circumstances, (1) the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable, and that (2) the officer's response to the safety concerns was, itself, objectively reasonable." *Id.*

In this case, defendant does not contend that the officers were not subjectively concerned that defendant presented an immediate threat of serious physical injury. Rather, defendant contends that that concern was not objectively reasonable.

In determining whether officers' concern for their safety is objectively reasonable, we "examine the totality of the circumstances as they reasonably appeared to the officers at the time." *State v. Jackson*, 190 Or App 194, 199, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004). "To be objectively reasonable, the officer's safety concerns must be based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *State v. Smith*, 277 Or App 298, 303,

373 P3d 1089, *rev den*, 360 Or 401 (2016) (internal quotation marks omitted). "To consider the true totality of the circumstances * * * requires a court to consider the entire encounter as it objectively transpired." *Ramirez*, 305 Or App at 207.

In making its officer-safety argument on appeal, the state points to a number of facts regarding this encounter, including that it took place at night; that defendant's criminal history included "priors with firearms" and gang involvement; that multiple people were in the stopped vehicle; that officers had difficulty seeing into the vehicle; that when defendant got out of the vehicle he had a knife on his belt; and that Pierce had discovered a large, unknown object in defendant's "waistband area," which is a "common area to conceal weapons."

On this record, given the way in which the officers' encounter with defendant transpired prior to handcuffing him, we cannot conclude that the state met its burden to establish that the officers' subjective safety concerns were objectively reasonable.[4] *See, e.g.*, *Goguen*, 308 Or App at 710 (noting "that [the] encounter happened at night adds little to justify officer safety concerns"); *State v. Bradford*, 290 Or App 889, 898, 417 P3d 530 (2018) (noting that "we have cautioned that an officer's perceptions of the stereotypical practices of gang members is the kind of generalized suspicion that seldom will constitute a reasonable suspicion based on particularized facts" (internal quotation marks and brackets omitted)); *State v. Morfin-Estrada*, 251 Or App 158, 169, 283 P3d 378, *rev den*, 352 Or 565 (2012) ("We have held in the context of cases involving searches for officer safety purposes, general information that gang members carry weapons is insufficient to give rise to a reasonable suspicion that a particular gang member is carrying a weapon."); *State v. Steffens*, 250 Or App 742, 750, 282 P3d 888 (2012) ("An officer's knowledge of the defendant's past conduct is relevant to the officer-safety inquiry; however, where past conduct is not coupled with any indication that the defendant is *currently* dangerous, it is unlikely to be determinative." (Emphasis in original.)).

---

[4] Because we conclude that the officers' subjective safety concerns were not objectively reasonable, we do not consider whether the officers' response to the safety concerns was, itself, objectively reasonable.

In particular, we note that although the presence of the pocketknife on defendant's person is a proper consideration, "like all facts, it must be viewed in the totality of the circumstances of the entire encounter." *Ramirez*, 305 Or App at 208. That totality includes the fact that, at the time officers decided to handcuff defendant, the knife had been removed by officers, and that defendant—indeed, all of the van's occupants—were cooperative throughout the encounter. *See id.* ("That defendant had previously tried to walk away from the initial stop is a proper consideration, but, like all facts, it must be viewed in the totality of the circumstances of the entire encounter," including that "at the time the seizure based on officer safety concerns occurred, defendant *had* stopped, was sitting on the curb, and was described as being fully cooperative." (Emphasis in original.)); *Bailey*, 307 Or App at 792 (noting that, though not dispositive, "a defendant's compliant behavior may play a significant role in our determination of whether officer-safety concerns justify a search"); *Smith*, 277 Or App at 309 (holding that officer safety doctrine was inapplicable where "there was no evidence that the target shooters were violent and heavily armed, and there was no other context to suggest that the presence of one weapon foretold another"). Additionally, given the totality of the circumstances in this case, the presence of a "large foreign object," which officer Pierce was unable to identify when patting down defendant, did not make a concern that defendant posed an immediate threat of serious physical injury to the officers objectively reasonable.

## B.   *Discovery of the First Package of Methamphetamine*

Having rejected the state's argument that officer safety concerns justified handcuffing defendant, we turn to the state's alternative argument that, "[e]ven if defendant is correct that he was unlawfully arrested when the officers handcuffed him," that "illegality did not lead to the discovery of the first package of methamphetamine found in defendant's waistband." In the state's view, "defendant's consent led to that discovery, and defendant has not argued on appeal that he did not validly consent to [a] patdown search." Thus, the state contends that, because "defendant consented to the search that revealed the first package of

methamphetamine," that package was not discovered as a result of the unlawful handcuffing of defendant and does not need to be suppressed.

Defendant responds, in part, that the officers' "discovery of the nature of the item" in his waistband "was a direct fruit of the unlawful seizure." In defendant's view, defendant's "consent to the earlier patdown provides no basis to affirm the trial court's denial of the motion to suppress."

In considering the state's argument on appeal, we note that the state does not argue that both objects containing methamphetamine were admissible by virtue of defendant's consent to search; rather, the state only posits that the first object—which was discovered prior to handcuffing defendant—was admissible by virtue of defendant's consent to search. For that reason, we do not understand the state to argue that defendant's consent to the search continued even after he was unlawfully handcuffed. Rather, we understand the state's argument to be that Pierce's awareness of the object in defendant's waistband prior to unlawfully handcuffing defendant renders the contents of that object admissible evidence.

But that argument is untenable. Even though defendant consented to the initial "patdown search" and defendant does not challenge the validity of that consent, Pierce had "no idea" what the object in defendant's waistband was until after defendant was unlawfully handcuffed. It was only after the "more expansive patdown" of defendant, which occurred after defendant was unlawfully handcuffed, that officers discovered that the object in defendant's waistband and the object in defendant's sleeve contained methamphetamine. And as noted, the state does not argue that defendant's consent to search was effective even after the handcuffing of defendant. Thus, we reject the state's alternative argument regarding admissibility of the first object containing of methamphetamine.[5]

---

[5] We note that, on appeal, the state also does not argue that the officers would have inevitably discovered that the object in defendant's waistband contained methamphetamine absent handcuffing defendant. *State v. Steele*, 290 Or App 675, 681, 414 P3d 458 (2018) ("The inevitable discovery doctrine permits the state to purge the taint of illegally obtained evidence by proving, by a preponderance of the evidence, that such evidence inevitably would have been discovered,

### III.  CONCLUSION

In light of the forgoing, we conclude that the trial court erred when it denied defendant's motion to suppress. We reverse and remand.

Reversed and remanded.

---

absent the illegality, by proper and predictable police investigatory procedures." (Internal quotation marks and brackets omitted.)). Nor does the state argue that Pierce had probable cause to arrest defendant at the time he handcuffed defendant. *See State v. Phillips*, 312 Or App 239, 247 n 4, 491 P3d 99 (2021) ("[W]e observe that the restriction imposed by handcuffing defendant typically converts a stop into an arrest, requiring the officer to possess probable cause, not reasonable suspicion, of the commission of a crime."); *State v. Foster*, 233 Or App 135, 140-41, 225 P3d 830 (2010), *aff'd*, 350 Or 161, 252 P3d 292 (2011) (noting that, in the context of justification to arrest a person, probable cause "'means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it'" (quoting ORS 131.005(11))).