216 December 31, 2025 No. 1142

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAREN ALMESTICA,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR42344; A180825

Amy M. Baggio, Judge.

Submitted October 15, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Reversed and remanded.

_____
    * Lagesen, Chief Judge *vice* Mooney, Senior Judge.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for possession of a stolen vehicle, ORS 819.300. In one assignment of error, defendant challenges the trial court's denial of her motion to suppress statements she made after officers handcuffed her and placed her in the back of a patrol car. Defendant argues that that level of restraint was not justified by officer-safety concerns and constituted an arrest for which the officers lacked probable cause. The state acknowledges that our holding in *State v. Huerta-Contreras*, 336 Or App 251, 560 P3d 728 (2024), *rev allowed*, 373 Or 736 (2025), "appears to defeat its arguments in support of probable cause" but argues that legitimate officer-safety concerns justified defendant's seizure. The state further argues that, even if defendant's seizure was unlawful, the trial court's ruling was right for the wrong reason because defendant's statements did not derive from the illegality.

We conclude that defendant's seizure was not justified by officer-safety concerns and that, under *Huerta-Contreras*, the officer did not have probable cause to arrest defendant. Additionally, because the record may have developed differently if the state had raised its attenuation argument below, we do "not consider the alternative basis for affirmance." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Accordingly, we reverse and remand.

## I.   FACTS AND PROCEDURAL HISTORY

We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's findings of fact when there is constitutionally sufficient evidence in the record to support those findings. *State v. Payne*, 310 Or App 672, 674, 487 P3d 413, *rev den*, 368 Or 514 (2021). We state the facts in accordance with those standards.

Deputy Eide was on patrol just after midnight on December 9, 2020, when he ran the license plate of a truck driving in front of him and learned that the truck had been reported stolen. Eide called for backup, and after another deputy arrived, he initiated a criminal stop of the truck. Defendant, who was driving the truck, pulled into a gas

station parking lot. The parking lot was well-lit and Eide did not notice any other cars in the lot.

Eide and another deputy drew their guns into a "compressed ready" stance with their guns "pointed straight down at the ground," and told defendant to turn off the engine and remove the keys. After other deputies arrived and there were enough officers for a "hands team," Eide ordered defendant out of the truck. There were at least four and no more than six deputies present. Defendant exited the truck, and deputies placed her in handcuffs, patted her down for weapons and did not discover any weapons, and placed her in the back of Eide's patrol car.

After deputies placed defendant in Eide's patrol car, they cleared the truck to make sure no one else was inside, and Eide noticed that a small window in the rear of the truck was broken, which is "something that [Eide] typically would see in a stolen vehicle." After clearing the truck, which took about one minute, Eide went back to his patrol car, read defendant her *Miranda* rights, and questioned her about the truck. Defendant told Eide that a friend had given her the truck, that the window was broken when it was given to her, and that she was suspicious because her friend's name was not on the title. Defendant told Eide that she had called Clackamas County to ask them if the truck was stolen and they told her it was not. Eide issued a citation charging defendant with unlawful use of a motor vehicle (UUV) and possession of a stolen vehicle (PSV).

Before trial, defendant filed a motion to suppress the statements that she made to Eide, arguing that she was unlawfully seized when she was placed in handcuffs in the patrol car because the seizure was not justified by officer-safety concerns or probable cause to arrest. The state argued that there was probable cause to arrest defendant, or, alternatively, the seizure was justified by officer-safety concerns.

At a hearing on defendant's motion, Eide testified that he conducted the stop as a "high-risk" stop pursuant to his training. Eide treats stops involving stolen vehicles as high-risk because, based on the severity of the charges,

there is a "higher likelihood that people might elude or there might be a presence of weapons" and "there's a danger of people in the public getting injured or [officers] getting injured." Eide explained that a high-risk stop involves multiple officers, with some officers providing "lethal cover" with firearms and others "ready with hands to take a person into custody." After occupants are ordered out of the vehicle, it is standard practice to handcuff them, pat them down for weapons, and place them in a patrol car to mitigate the risk that they will flee or attack officers who are focused on clearing the vehicle. Eide testified that the safety concerns associated with a high-risk stop were present when he stopped defendant "[j]ust based on the charges alone of the vehicle being stolen and weapons often being associated with stolen vehicles." Eide also testified that defendant was cooperative during the encounter.

The trial court concluded that Eide's decision to handcuff defendant and place her in the patrol car was justified by officer-safety concerns because at that point the officers were "still engaged in the investigation of the vehicle and whether there [was] someone else in it." The trial court further found that, after the truck was cleared, the officer-safety exception dissipated, but because Eide had observed the broken window while they cleared the truck, he had probable cause to arrest defendant for UUV. Accordingly, the trial court denied defendant's motion.

## II.   ANALYSIS

On appeal, defendant assigns error to that ruling, renewing her argument that she was unlawfully seized when she was placed in the patrol car in handcuffs because that level of restraint was not justified by officer-safety concerns or probable cause to arrest her.[1]

---

[1] Defendant also argues that she was unlawfully seized when deputies ordered her out of the truck with guns drawn and handcuffed her. We do not address that argument, however, because defendant did not make the argument before the trial court and does not request that we review for plain error. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." (Internal quotation marks omitted.)).

At the outset, we note that defendant does not dispute that Eide lawfully stopped her because he reasonably suspected that she had committed a crime. *See* ORS 131.615(1) (an officer who suspects that a person has committed or is about to commit a crime may stop the person and make a reasonable inquiry). And the state does not dispute that handcuffing and placing defendant into the patrol car constituted a seizure. *See State v. Najar*, 287 Or App 98, 103, 401 P3d 1205 (2017) (under Article I, section 9, of the Oregon Constitution, a seizure occurs if an officer "intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement"). Thus, the question before us is whether the warrantless seizure was justified under (1) the officer-safety doctrine, or (2) probable cause to arrest. *See id.* at 107 (the officer-safety doctrine is one of the established exceptions to the general rule that warrantless searches and seizures are *per se* unreasonable and therefore unlawful under Article I, section 9); *State v. Sepulveda*, 288 Or App 632, 640-41, 406 P3d 169 (2017) (absent legitimate officer-safety concerns, a seizure is nonetheless justified if the officer has probable cause to arrest).

## A.   *Officer-Safety Concerns*

We begin with whether the seizure was lawful under the officer-safety doctrine. Under that doctrine, an officer may take "reasonable steps to protect [the officer] or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The state bears the burden of establishing that the officer subjectively believed that the defendant posed a threat, and that the officer's belief was objectively reasonable. *State v. Rodriguez-Perez*, 262 Or App 206, 212-13, 325 P3d 39 (2014). For an officer's belief to be objectively reasonable, the safety concerns "must be based on facts specific to the particular person * * *, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *Id.* at 213 (internal quotation marks omitted).

We conclude that Eide's belief that defendant posed an immediate threat of serious physical injury was not objectively reasonable. Eide testified that stops involving stolen vehicles present officer-safety concerns because there is a higher likelihood that the suspect will flee or that there will be weapons in the vehicle, and thus it was necessary to handcuff defendant and place her in the patrol car. Although an officer's experience is a relevant factor to consider in assessing the objective reasonableness of safety concerns, it is "insufficient by itself to corroborate the objective reasonableness of [the officer's] suspicion" when there are no facts specific to the defendant that they posed an immediate threat of physical injury. *State v. Amell*, 230 Or App 336, 345, 215 P3d 910 (2009).

Here, Eide did not connect his generalized concerns to anything specific to defendant. The only fact that Eide articulated that was specific to defendant was that she was cooperative. Under those circumstances, Eide did not articulate valid officer-safety concerns. *See State v. Meeker*, 293 Or App 82, 88, 427 P3d 1114 (2018) (where traffic stop occurred at night in area frequented by drug users and the defendant made a furtive movement towards the passenger seat, seizure of the defendant was not justified by officer-safety concerns where the defendant was compliant and did not appear "nervous or agitated"); *State v. Davis*, 282 Or App 660, 385 P3d 1253 (2016) (officer's safety concerns were not objectively reasonable during traffic stop where the defendant made a furtive movement inside the truck, appeared nervous, and had "bulges" in his pockets, but was cooperative and nonconfrontational, and no weapons were visible inside the truck).

### B. *Probable Cause to Arrest*

Having concluded that defendant's seizure was not justified by officer-safety concerns, we next determine whether the seizure was justified because Eide had probable cause to arrest defendant. We agree with the state that under *Huerta-Contreras*, Eide did not have probable cause to believe that defendant had committed a crime. ORS 133.310(1) (an officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed

a crime). At the point when Eide placed defendant into the patrol car in handcuffs, the only fact supporting probable cause was that defendant was driving a truck that had been reported stolen.[2] Without more, that fact does not establish probable cause to believe that defendant knew or acted with a reckless disregard for the fact that the vehicle was stolen. *See* ORS 164.135(1)(a)(A) - (C) (to commit the crime of UUV, a person must knowingly take, operate, exercise control over or otherwise use another's vehicle, and be aware of and consciously disregard a substantial and unjustifiable risk that they do not have the consent of the owner to do so); ORS 819.300(1) (to commit the crime of PSV, a person must possess any vehicle which the person knows or has reason to believe has been stolen); *Huerta-Contreras*, 336 Or App at 253 (the fact that the defendant was sitting in the driver's seat of a car that had been reported stolen did not establish probable cause to believe that the defendant possessed the culpable mental state for UUV).

In sum, we conclude that defendant's seizure was unlawful because it was not justified by legitimate officer-safety concerns or probable cause to arrest.

A.  *Whether we should affirm under the "right for the wrong reason" doctrine.*

The state argues that, notwithstanding that conclusion, we may affirm the trial court's denial of defendant's motion to suppress under the "right for the wrong reason" doctrine. *See Outdoor Media Dimensions*, 331 Or at 659-60 (holding that we may exercise our discretion to affirm on an alternative basis if (1) the record is sufficient to support the alternative basis for affirmance, (2) the trial court's ruling is consistent with that view of the record, and (3) the record is "materially *** the same one that would have been

---

[2] We note that the truck was reported stolen six days before Eide stopped defendant, but it is unclear from the record whether Eide learned that fact before or after he had placed defendant in the patrol car. In any event, whether Eide knew that fact before placing defendant in the patrol car would not change our conclusion that Eide did not have probable cause. *See Huerta-Contreras*, 336 Or App at 254 ("There may be circumstances where the brief time between a vehicle being stolen and a person being seen driving the vehicle could contribute to finding probable cause, but in the circumstances here—several hours having passed—defendant's presence in the driver's seat does not contribute much, if anything, toward probable cause.").

developed had the prevailing party raised the alternative basis for affirmance below").

As an alternative basis to affirm, the state argues that "nothing about the alleged illegality in this case—the level of defendant's restraint—caused Eide to *** obtain defendant's statements." *See State v. Jackson*, 268 Or App 139, 151, 342 P3d 119 (2014) (the state can rebut the presumption that evidence was tainted by a constitutional violation and must be suppressed "by establishing that the disputed evidence did not derive from the preceding illegality" (internal quotation marks omitted)). In the state's view, the illegality at issue here is that defendant was unlawfully handcuffed in a patrol car for roughly one minute, and that, regardless of that level of restraint, Eide would have developed probable cause after discovering the broken window and then questioned defendant. In other words, the state argues that defendant's statements were not the product of the unlawful seizure because in obtaining defendant's statements, Eide did not "trade on or exploit the degree of defendant's restraint." *See State v. Crescencio-Paz*, 196 Or App 655, 660, 103 P3d 666 (2004), *rev den*, 339 Or 230 (2005) (where handcuffing and placing the defendant in a patrol car converted a lawful stop to an unlawful arrest but police did not "exploit or trade on" that fact to obtain the victim's identification of him, the trial court correctly denied the defendant's motion to suppress).

We conclude that the record would have developed differently, had the state raised its attenuation argument below. We have observed that determining whether the police exploited their unlawful conduct to obtain consent to search involves a "fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection." *State v. Booth*, 272 Or App 192, 199-200, 355 P3d 181 (2015) (concluding that the record was insufficient to affirm the trial court's denial of motion to suppress under alternative basis that the defendant's consent to search was sufficiently attenuated from the unlawful police conduct in extending traffic stop). That principle applies here, where defendant made inculpatory statements after being unlawfully seized and defendant did not have an opportunity to

elicit evidence with respect to the circumstances relevant to defendant's state of mind and whether there was a causal connection between the illegality and defendant's statements to Eide. Because the record would have developed differently on a material issue, we do "not consider the alternative basis for affirmance." *Outdoor Media Dimensions*, 331 Or at 659-60.

Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress because defendant's seizure was not justified by valid safety-concerns or probable cause to arrest and was therefore unlawful. We further conclude that that error was not harmless because the state relied on defendant's statements at trial to show that defendant had the relevant culpable mental state for purposes of PSV.

Reversed and remanded.